UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————
                                              )
JESSE SKINNER,                                )
                                              )
                          Plaintiff,          )
                                              )
        v.                                    )        Civil Action No.  09-0725  (PLF)
                                              )
UNITED STATES DEPARTMENT                       )
OF JUSTICE, *et al.*,                          )
                                              )
                          Defendants.         )
———————————————————————        )

OPINION

        Plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5

U.S.C. § 552, against the United States Department of Justice ("DOJ") and four of its

components.  The DOJ moves to dismiss in part on the ground that plaintiff's complaint fails to

state claims upon which relief can be granted with respect to FOIA requests submitted to the

Executive Office for United States Attorneys ("EOUSA") and the Drug Enforcement

Administration ("DEA").  In addition, the DOJ moves for summary judgment with respect to

FOIA requests submitted to the Bureau of Alcohol, Tobacco, Firearms and Explosives

("BATFE"), and the Federal Bureau of Investigation ("FBI").  Plaintiff moves for summary

judgment and demands the release of all information he has requested.

For the reasons discussed below, the DOJ's motion to dismiss will be denied, its motion for summary judgment will be granted in part and denied in part without prejudice, and plaintiff's motion for summary judgment will be denied without prejudice.[1]

## I. BACKGROUND

### A. FOIA Request to the BATFE

On July 3, 2007, plaintiff submitted a FOIA request to the BATFE's Biloxi, Mississippi Field Office. Compl. ¶ 4; Defs.' Mem. of P. & A. in Supp. of their Mot. to Dismiss In Part, and Alternatively, Mot. for Summ. J. ("Defs.' Mem."), Decl. of Averill P. Graham ("Graham Decl.") ¶ 19.[2] In relevant part, the request read:

> This letter serves as a FOIA request . . . for copies of any and all records created and received by the Biloxi, Mississippi Field Office for the [BATFE] in regards to myself – JESSE SKINNER. In addition, this is a request for an index of any and all files maintained by the [BATFE] in reference to me.

---

[1] The Court will deny plaintiff's "Motion for Production of the Medical Records of Department of Justice Personnel DEA TFA Craig S. Shows and John Bordages[,] Jr." [Dkt. #23], "Motion for FBI to Turn Over All Information I.E. FBI Request No. 1011170-000 To Plaintiff" [Dkt. #24], and "Motion to Compel" [Dkt. #34], and will grant his "Motion for Production of Plaintiff's Free 100 Page's [sic] Unlawfully Being Withheld by the EOUSA and All Other Information's [sic] Unlawfully Being Withheld by the EOUSA" [Dkt. #25] for reasons discussed elsewhere in this Opinion. Plaintiff's "Motion to Proceed with Jury Trial" [Dkt. #29] will be denied. There appears to be no reason why this civil action cannot be resolved on summary judgment, the typical procedural vehicle by which FOIA cases are resolved. *See Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009) ("FOIA cases are typically and appropriately decided on motions for summary judgment.").

[2] Plaintiff's original complaint [Dkt. #1] clearly and concisely sets forth factual allegations with respect to his FOIA requests to four DOJ components. The Court has reviewed "Plaintiff's Addendum to Complaint for Declaratory and Injunctive Relief," which appears on the docket as an amended complaint [Dkt. #8], and concludes that plaintiff did not intend for it to supersede the original complaint.

<u>EXAMPLES OF REQUEST</u>:

> Any and all written, recorded or graphic matter, however produced or reproduced, including but not limited to, photographs, logs, minutes of meetings, memoranda, inter-office communications, computer applications, electronic mail (including old or "deleted" electronic mail on back-up tapes, back-up files etc.), notes, studies, analyses, and reports created and received by [BATFE] in regards to me.

Graham Decl., Ex. Q (FOIA request) at 1. The BATFE assigned the matter a tracking number, No. 07-1248. *See id.*, Ex. R (Letter from A. Sands, Disclosure Assistant, BATFE, to plaintiff dated July 18, 2007).

On August 6, 2007, the BATFE denied plaintiff's request pursuant to Exemption 7(A), Compl. ¶ 6, on the mistaken belief that release of the requested records "could reasonably be expected to interfere with enforcement proceedings." Graham Decl., Ex. S (Letter from S. Placanica, Disclosure Specialist, BATFE, dated August 6, 2007). Plaintiff filed an administrative appeal to the DOJ's Office of Information and Privacy ("OIP") challenging the BATFE's response. Graham Decl. ¶ 22.[3] The OIP remanded the matter, which it had assigned Appeal No. 07-2300, because it determined that Exemption 7(A) no longer applied. *Id.* ¶ 24; *see id.*, Ex. V (Letter from J.G. McLeod, Associate Director, OIP, DOJ, to plaintiff dated October 25, 2007).

Apparently the BATFE assigned plaintiff's request a new tracking number, No. 08-171, on remand. On November 21, 2007, the BATFE granted plaintiff's FOIA request in part and denied it in part, releasing the first 100 pages of responsive records, or segregable portions thereof, pending receipt of fees arising from the search for and copy of the records. Graham

---

[3]     The OIP is now known as the Office of Information Policy.

Decl. ¶ 25.  Upon receipt of plaintiff's money order, *id.* ¶ 25, on December 13, 2007, the BATFE

released additional records, *id.* ¶ 32, after having withheld certain information under FOIA

Exemptions 2, 3, 6, and 7(C).  *Id.*; *see id.*, Ex. DD (Letter from S. Placanica to plaintiff dated

December 13, 2007) at 1; Pl.'s Opp'n, Ex. JJ (Document Cover Sheet: Exemptions List and

Appeal Rights regarding File No. 08-171).[4]  It withheld in full recordings of phone calls under

Exemption 7(C).  Graham Decl. ¶ 32.  On "review of all the documents for litigation," the

BATFE concluded that "further segregable information" could be released, and on October 26,

2009, it released 34 more pages of records.  *Id*. ¶ 34.

### 1.  Administrative Appeal to the OIP

On December 26, 2007, plaintiff filed an administrative appeal to OIP challenging

the adequacy of the BATFE's search for responsive records, Compl. ¶ 11, and its reliance on

Exemptions 3, 6 and 7(C) to withhold certain information.  Graham Decl. ¶ 34; *see id.*, Ex. FF

(Letter from plaintiff to the OIP dated December 26, 2007).  The OIP assigned the matter Appeal

No. 08-0820, *id.* ¶ 35, and it affirmed the BATFE's response to plaintiff's FOIA request "on

partly modified grounds," Graham Decl. ¶ 37, concluding that the BATFE's decisions to

withhold information under Exemptions 2, 3, 5, 7(C) and 7(E) was appropriate and that its search

for responsive records was adequate.  *Id.*, Ex. II (Letter from J.G. McLeod to plaintiff dated

March 8, 2008) at 1-2.

---

[4]        The BATFE's December 13, 2007 disclosure appears to have included "1 CD of
photograph."  Pl.'s Opp'n, Ex. JJ at 3.  It is unclear from the BATFE's supporting declaration
and *Vaughn* index whether this CD has been released.  The Court will defer consideration of
plaintiff's "Motion for Production of ATF CD Containing Photographs and All Other
Photograph's [sic] with Respect to Plaintif[f]'s Instant Civil Action in Possession of the ATF"
[Dkt. #22] until such time as defendant has an opportunity to respond to the motion.

## 2.  Referrals

In addition to the November 21, 2007 and December 13, 2007 releases of records to plaintiff, the BATFE referred records to the agencies where they originated.  *See* Graham Decl. ¶¶ 26-27, 29-31.

### a.  Referral to the Department of the Army

On November 21, 2007, the BATFE referred 12 pages of records to the Department of the Army ("Army").  Graham Decl. ¶ 26; *see id.*, Ex. X (Letter from S. Placanica to R. Dickerson, Freedom of Information and Privacy Acts Division, Department of the Army, dated November 21, 2007).  The result of this referral has not been explained.

### b.  Referrals to the DEA (Nos. 08-0407-P and 08-0450-P)

On November 21, 2007, the BATFE referred six pages of records to the DEA. Graham Decl. ¶ 27; *see id.*, Ex. Y (Letter from S. Placanica to K.L. Myrick, Chief, Freedom of Information Operations Unit, FOI/Records Management Section, DEA, dated November 21, 2007).  The DEA assigned the matter DEA FOIA No. 08-0407-P, and notified plaintiff of its decision to withhold these records in full pursuant to FOIA Exemptions 7(C), 7(D), and 7(F). Defs.' Mem., Decl. of Katherine L. Myrick ("Myrick Decl.") ¶ 15; *see id.*, Ex. M (Letter from K.L. Myrick to plaintiff dated March 17, 2008).  Plaintiff appealed the DEA's decision to the OIP.  Graham Decl. ¶ 38; *see id.*, Ex. JJ (Letter from plaintiff to the OIP dated April 13, 2008). The OIP acknowledged receipt of the appeal in writing, and assigned the matter Appeal No. 08-1591.  *Id.*, Ex. KK (Letter from P. Jones, Supervisory Administrative Specialist, OIP, to plaintiff dated April 24, 2008).  The OIP deemed the appeal a duplicate of that pursued with

respect to plaintiff's previous appeal of the BATFE's response to the underlying FOIA request, Appeal No. 08-0820, Graham Decl. ¶ 40, and administratively closed the appeal. *See id.*, Ex. LL (Letter from J.G. McLeod to plaintiff dated June 5, 2008).

The BATFE referred 22 additional pages to the DEA on December 13, 2007. Graham Decl. ¶ 30; *see id.*, Ex. BB (Letter from S. Placanica to K.L. Myrick dated December 13, 2007). The BATFE noted that the records contained "BATFE information . . . which have been marked with deletions under [Exemptions 6 and 7(C)] because release of these records could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.*, Ex. BB. The DEA denied plaintiff's request, which was assigned DEA FOIA Request No. 08-0450-P, and withheld all 22 pages in full pursuant to Exemptions 7(C), 7(D), and 7(F). Myrick Decl. ¶ 20; *see id.* Ex. R (Letter from K.L. Myrick to plaintiff dated March 17, 2008). Plaintiff appealed this decision to the OIP, Myrick Decl. ¶ 21; *see id.*, Ex. S (Letter from plaintiff to the OIP dated April 13, 2008), and the OIP, which assigned the matter Appeal No. 08-1594, *id.*, Ex. T (Letter from P. Jones to plaintiff dated April 24, 2008), affirmed the decision but remanded the matter for the sole purpose of determining whether one of the 22 pages was properly withheld in full. *Id.*, Ex. U (Letter from J.G. McLeod to plaintiff dated June 20, 2008) at 1.

In conducting a review of the records for this litigation, the DEA determined that only 16 pages of records could be withheld in full; it released six redacted pages of records because Exemption 7(A) no longer applied. Myrick Decl. ¶ 24; *see id.*, Ex. V (Letter from K.L. Myrick to plaintiff dated June 10, 2009) at 1. One of these redacted pages was the single page remanded by OIP on June 20, 2008. Myrick Decl. ¶ 24.

c.  Referral to the U.S. Citizenship and Immigration Services

On December 13, 2007, the BATFE referred one page to the U.S. Citizenship and Immigration Service ("USCIS").  Graham Decl. ¶ 29; *see id.*, Ex. AA (Letter from S. Placanica to B.J. Welsh, FOIA Officer, USCIS, dated December 13, 2007).  The result of this referral has not been explained.

d.  Referral to the EOUSA (No. 07-4371-R)

On December 13, 2007, the BATFE referred two pages of records to the EOUSA.  Graham Decl. ¶ 31; *see id.*, Ex. CC (Letter from S. Placanica to W.G. Stewart, II, Assistant Director, FOIA/Privacy Unit, EOUSA, dated December 13, 2007).  The BATFE noted that the records contained "BATFE information . . . which [has] been marked with deletions under [Exemptions 6 and 7(C)] because release of these records could reasonably be expected to constitute an unwarranted invasion of personal privacy."  *Id.*, Ex. CC.  From these two pages of records, the EOUSA withheld information under Exemption 7(C).  *Id.*, Ex. HH (Letter to plaintiff from W.G. Stewart II) at 2.

*B.  FOIA Requests to the FBI*

On July 3, 2007, plaintiff submitted nearly identical FOIA requests to the FBI's Washington, D.C. headquarters ("FBIHQ") and to its Jackson, Mississippi Field Office ("JNFO").  *See* Defs.' Mem., Decl. of David M. Hardy ("Hardy Decl."), Ex. A, C (July 3, 2007 FOIA requests to FBIHQ and JNFO respectively).  Both letters were addressed to the DOJ's FOI/PA Referral Unit, Justice Management Division, in Washington, D.C.  *Id.*  In relevant part, the request read:

7

> This letter serves as a FOIA request . . . for copies of any and all records created and received by the [FBIHQ and JNFO] in regards to myself – JESSE SKINNER. In addition, this is a request for an index of any and all files maintained by the FBI in reference to me.
>
> EXAMPLES OF REQUEST:
>
> Any and all written, recorded or graphic matter, however produced or reproduced, including but not limited to, photographs, logs, minutes of meetings, memoranda, inter-office communications, computer applications, electronic mail (including old or "deleted" electronic mail on back-up tapes, back-up files etc.), notes, studies, analyses, and reports created and received by FBI in regards to me.
> More specifically I am requesting a search of the FBI's Central Records System ("CRS"); Automated Case Support System ("ACSS"); Electronic Case Files ("ECF"); Universal Index Files ("UIF"); Legal Attaches ("Legats"); Investigative Case Management System ("ICMS"); Confidential Source System ("CSS"); and the "I-Drive" System.

*Id.*, Ex. A at 1. Plaintiff's FOIA request to FBIHQ was assigned FOIPA No. 1086283-000.

Hardy Decl. ¶ 8. A search of the automated indices of the agency's Central Record System ("CRS") located no main files responsive to his request. *Id.* The FBIHQ notified plaintiff in writing of the results of the search, and advised him of his right to file an administrative appeal with the OIP. *Id.*; *see id.*, Ex. B (letter from D.M. Hardy, Section Chief, Record/Information Dissemination Section, Records Management Division, FBIHQ, to plaintiff dated July 31, 2007).

The FBIHQ assigned the request intended for JNFO a separate tracking number, FOIPA No. 1086209-000, Hardy Decl. ¶ 10, and, without realizing that the request was meant for field office records, staff conducted a second and unproductive search of the CRS locating no responsive records in its main files. *Id.*, Ex. D (Letter from D.M. Hardy to plaintiff dated July 31, 2007). Its written response to plaintiff also advised him of his right to file an administrative appeal of the decision with the OIP. *Id.* Plaintiff did appeal the FBIHQ's response to FOIPA

Request No. 1086209-000.  *Id.*, Ex. E (Letter to the Director of the OIP from plaintiff dated August 17, 2007).  The OIP affirmed the decision and recommended that plaintiff submit a request directly to JNFO.  *Id.*, Ex. G (Letter from J.G. McLeod to plaintiff dated October 4, 2007).

On November 6, 2007, plaintiff sent a letter to the JNFO stating that he had not received a response to his July 3, 2007 FOIA request to that field office.  Hardy Decl. ¶ 14; *see id.*, Ex. H (Letter to the FBI, JNFO, from plaintiff dated November 6, 2007); *see* Compl. ¶ 20. The FBIHQ treated this letter as a new request and assigned it FOIPA No. 1100573-000.  Hardy Decl. ¶ 15.  A search for main files in the CRS' automated indices at the JNFO yielded no responsive records.  *Id.*, Ex. I (Letter from D.M. Hardy to plaintiff dated November 27, 2007). Plaintiff appealed this decision to the OIP on December 26, 2007.  *Id.*, Ex. J (Letter to the OIP to plaintiff dated December 26, 2007); Compl. ¶ 22.  The OIP affirmed.  Hardy Decl. ¶ 18; *see id.*, Ex. L (Letter from J.G. McLeod to plaintiff dated March 27, 2008).

The FBI conducted a third search of FBIHQ and JNFO records after this litigation commenced.  Hardy Decl. ¶¶ 20 n.2, 34.  That search located 101 pages of records responsive to his FOIA request, and on October 22, 2009, the FBI released 20 pages in full, released 68 pages in part, and withheld 13 pages in full, *id.* ¶ 20, invoking FOIA Exemptions 2, 6, 7(C), 7(D), and 7(E).  *See generally id.* ¶¶ 41-79.

## C. FOIA Request to the EOUSA

On July 3, 2007, plaintiff submitted a FOIA request to the EOUSA, which read in relevant part:

> This letter serves as a FOIA request . . . for copies of any and all records created and received by the United States Attorney's Office for the Southern District of Mississippi ("USAO") in regards to myself – JESSE SKINNER. In addition, this is a request for an index of any and all files maintained by the USAO in reference to me.

> EXAMPLES OF REQUEST:

> Any and all written, recorded or graphic matter, however produced or reproduced, including but not limited to, photographs, logs, minutes of meetings, memoranda, inter-office communications, computer applications, electronic mail (including old or "deleted" electronic mail on back-up tapes, back-up files etc.), notes, studies, analyses, and reports created and received by USAO in regards to me.

> More specifically I am requesting a search of the USAO's Central Records System ("CRS"); Automated Case Support System ("ACSS"); Electronic Case Files ("ECF"); Universal Index Files ("UIF"); Legal Attaches ("Legats"); Investigative Case Management System ("ICMS"); Confidential Source System ("CSS"); and the "I-Drive" System.

Defs.' Mem., Decl. of Vinay J. Jolly ("Jolly Decl."), Ex. A at 1. The EOUSA "split the request into two separate files for processing purposes," Jolly Decl. ¶ 4, assigning Request No. 07-2439 "to the portion of [p]laintiff's request pertaining to himself for records in the Southern District of Mississippi," and Request No. 07-2440 "to the portion of his request pertaining [to] EOUSA's Electronic Records System." *Id.* n.1. The EOUSA's search for records maintained by the USAO for the Southern District of Mississippi yielded no responsive records about plaintiff himself. *Id.* ¶ 6. With respect to Request No. 07-2440, the EOUSA's Data Analysis Staff searched the USAO's Central Case Management System and National LIONS, the computer tracking system

for the USAOs, *id.* ¶ 8, and located five pages of responsive records, all of which were released in full. *Id.* ¶ 9; *see id.*, Ex. E (Letter from W.G. Stewart to plaintiff dated October 25, 2007) at 1.

Plaintiff administratively appealed both decisions to the OIP on November 6, 2007. Compl. ¶ 31; Jolly Decl. ¶ 10. Although the OIP affirmed the EOUSA's decision with respect to Request No. 07-2440, Jolly Decl., Ex. J (Letter from J.G. McLeod dated December 19, 2007), it remanded Request No. 07-2439 to the EOUSA so that it could conduct a further search for responsive records. *Id.*, Ex. K (Letter from J.G. McLeod to plaintiff dated December 10, 2008). Plaintiff was advised that if the EOUSA located responsive records, it would send any releasable records to him subject to any fees. *Id.*

On August 7, 2009, the EOUSA notified plaintiff that it had located records responsive to his FOIA request. Jolly Decl. ¶ 14. It proposed the release of 507 pages of records in full, the release of 68 pages of records in part, the withholding in full of 703 pages of records, and the referral of 694 pages of records to other agencies for their direct response to plaintiff. *Id.*, Ex. L (Letter from W.G. Stewart to plaintiff dated August 7, 2009) at 1-2. Before releasing any documents, however, the EOUSA asked plaintiff whether he wanted to receive only the first 100 pages of records for which there would be no charge, or whether he wanted to receive all releasable pages of records upon payment of $47.50 to cover copying costs. *Id.* at 2. Lastly, the EOUSA advised plaintiff that if it did not receive timely payment, it would close the matter and any future FOIA requests would be denied until it received payment. *Id.* Plaintiff did not pay the copy fees and the EOUSA closed his request. Jolly Decl. ¶ 16.

*D. FOIA Request to the DEA*

On July 3, 2007, plaintiff submitted a FOIA request to the DEA's Biloxi,

Mississippi Field Office, Compl. ¶ 35, and the DEA assigned it a tracking number, DEA FOIA

Request No. 07-1134-P. Myrick Decl. ¶ 6. In relevant part, the request read:

> This letter serves as a FOIA request . . . for copies of any and all
> records created and received by the Biloxi, Mississippi Field Office
> for the Drug Enforcement Administration ("DEA") in regards to
> myself – JESSE SKINNER. In addition, this is a request for an index
> of any and all files maintained by the DEA in reference to me.
>
> EXAMPLES OF REQUEST:
>
> Any and all written, recorded or graphic matter, however produced or
> reproduced, including but not limited to, photographs, logs, minutes
> of meetings, memoranda, inter-office communications, computer
> applications, electronic mail (including old or "deleted" electronic
> mail on back-up tapes, back-up files etc.), notes, studies, analyses,
> and reports created and received by DEA in regards to me.

*Id.*, Ex. A (FOIA request) at 1-2.[5] Of the 69 pages of records responsive to the request, the DEA

released three pages in part and withheld 63 pages in full pursuant to FOIA Exemptions 2, 7(A),

7(C), 7(D), and 7(F). *Id.* ¶ 7; *see id.*, Ex. D (Letter from K.L. Myrick to plaintiff dated February

28, 2008) at 2. In a separate letter, the DEA informed plaintiff that he had been referenced in

five "related" files, and instructed that, if he were to request a manual search of those files, the

estimated cost for this search was $224.00. *Id.*, Ex. E (February 28, 2008 letter from K.L.

Myrick). As of the filing of defendants' motion, plaintiff neither paid the search fees nor

requested a waiver. Myrick Decl. ¶ 7.

---

[5]      Nothing in plaintiff's FOIA request to the DEA suggests that he is seeking records related to third parties, and his Motion for Production of the Medical Records of Department of Justice Personnel DEA TFA Craig S. Shows and John Bordages[,] Jr." [Dkt. #23] and "Motion to Compel" [Dkt. #34] will be denied.

On April 13, 2008, plaintiff filed an administrative appeal to the OIP challenging the DEA's decision to withhold 63 pages of records in full, Myrick Decl. ¶ 8; *see id.*, Ex. F (Letter from plaintiff to the OIP dated April 13, 2008), and the OIP assigned the matter a tracking number, 08-1596. *Id.*, Ex. G (Letter from OIP to plaintiff dated April 24, 2008). The OIP affirmed the DEA's determination, concluding that information properly had been withheld under the claimed exemptions. *Id.*, Ex. H (Letter from J.G. McLeod to plaintiff dated June 20, 2008) at 1.

While performing a litigation review of the administrative file, the DEA determined that seven additional pages of records could be released to the plaintiff because Exemption 7(A) no longer applied. Myrick Decl. ¶ 11. All 63 pages of records were reviewed, and the DEA released six of these 63 pages in part, after redacting information pursuant to Exemptions 2, 7(C), 7(D), and 7(F). *Id.*; *see id.*, Ex. I (Letter from K.L. Myrick to plaintiff dated June 10, 2009). A seventh page, which indicated that a photographic exhibit had been destroyed, also was released. Myrick Decl. ¶ 11.

## II. DISCUSSION

### A. Summary Judgment in a FOIA Case

The Court will grant a motion for summary judgment if the pleadings, the discovery and disclosure materials on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

In a FOIA case, the Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations if they are relatively detailed and when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 74 (D.D.C. 2003). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Cent. Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### B. Exhaustion of Administrative Remedies

The FOIA requires that a party exhaust his administrative remedies before seeking judicial review. *Dettmann v. U.S. Dep't of Justice*, 802 F.2d 1472, 1477 (D.C. Cir. 1986). "Exhaustion does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 66 (D.C. Cir. 1990). Summary

judgment is appropriate when the plaintiff has failed to comply with agency fee regulations. *Antonelli v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 555 F. Supp. 2d 16, 23 (D.D.C. 2008); *Skrzypek v. U.S. Dep't of Justice*, 550 F. Supp. 2d 71, 73 (D.D.C. 2008). DOJ regulations specify, among other things, "the schedule of fees applicable to the processing of requests . . . and . . . the procedures and guidelines for determining when such fees should be waived or reduced." 5 U.S.C. § 552(a)(4)(A)(i); *see* 28 C.F.R. § 16.1 *et seq.* Payment is required "[r]egardless of whether the plaintiff 'filed' suit before or after receiving the request for payment." *Trueblood v. U.S. Dep't of the Treasury*, 943 F. Supp. 64, 68 (D.D.C. 1996).

A DOJ component "may charge for time spent searching even if [it does] not locate any responsive record or if [it] withhold[s] the record(s) located as entirely exempt from disclosure," 28 C.F.R. § 16.11(c)(1)(i), and for paper photocopies, 28 C.F.R. § 16.11(c)(2). For purposes of these regulations, the term "component" means "each separate bureau, office, board, division, commission, service, or administration of the Department of Justice." 28 C.F.R. § 16.1(b). The EOUSA and the DEA are DOJ components. *See* 28 C.F.R. § 0.1 (setting forth DOJ's organizational units). If the requester is not seeking records for a commercial purpose, a "component[] will provide without charge: (i) [t]he first 100 pages of duplication . . . ; and (ii) [t]he first two hours of search . . . ." 28 C.F.R. § 16.11(d)(3). "A component ordinarily shall collect all applicable fees before sending copies of requested records to a requester." 28 C.F.R. § 16.11(a); *see* 5 U.S.C. § 552(a)(4)(A)(v) (authorizing advance payment of a fee if "the requester has previously failed to pay fees in a timely fashion, or the agency has determined that the fee will exceed $250").

1.  Duplication Fees to the EOUSA

The EOUSA notified plaintiff in writing "that a copying fee of $47.50 representing . . . duplication was being incurred" with respect to Request No. 07-2439. Jolly Decl. ¶ 15. In relevant part, the notice read:

> After reviewing all the documents we have determined that we can make a partial release. You previously agreed to pay search and/or copying costs of $25.00. However, the copying charges exceed that amount. A **$ 47.50** copying fee is being assessed for these records. You may select one of the options below:
>
> 1) ___ I would like to receive up to 100 pages free of charges.
> 2) ___ I would like to receive all  _574_  pages and pay **$ 47.50**  for copying.
>
> Once you have made your selection please send your check or money order . . .. **If payment is not received within 30 days from the date of this letter, your request will be closed and any future requests for records will be rejected until payment is received. In addition, the above request will be deemed not received.**

*Id.*, Ex. L at 2 (emphasis in original). Because plaintiff did not pay the copying fees, the EOUSA closed his request. Jolly Decl. ¶ 16.

Plaintiff argues that the EOUSA's long delay in responding to this FOIA request, "over two (2) years from the initial request . . . and nearly eight (8) months after [the OIP's] remand," relieves him of any obligation to pay copying fees. Mem. in Supp. of Pl.'s Aff. in Opp'n of Defs.' Mot. to Dismiss In Part and in the Alternative, for Summ. J. ("Pl.'s Opp'n") at 3. "Because [the] EOUSA failed to respond within the time limits [set forth in 5 U.S.C. § 552(a)(6)(A)] . . . it should release without hesitation any and all information[] plaintiff can lawfully possess." *Id.* at 5. Plaintiff states, however, that [s]hould [the] Court see it fit that [he]

also pay the EOUSA the $47.50, then [he] will gladly cause the money to be sent immediately." *Id.* at 6.

Although the EOUSA may require payment of copying fees prior to the release of responsive records, neither its written notice to plaintiff nor its declaration in support of its summary judgment motion precludes the release of 100 pages of records at no charge to plaintiff. If plaintiff had chosen the first option, to receive up to 100 pages free of charges, the payment of copying fees would be moot. The notice states that the request would be closed if payment was not received within 30 days, but it did not state expressly that plaintiff's failure to respond timely would be cause for administrative closure of the request.

The Court will deny the EOUSA's motion for summary judgment on this ground, and will grant plaintiff's "Motion for Production of Plaintiff's Free 100 Page's [sic] Unlawfully Being Withheld by the EOUSA and All Other Information's [sic] Unlawfully Being Withheld by the EOUSA" [Dkt. #25]. The EOUSA is directed to release up to 100 pages of responsive records at no charge to plaintiff.[6]

### 2. Search Fees to the DEA for Request No. 07-1134-P

A search for records responsive to DEA FOIA Request No. 07-1134-P, addressed to the Biloxi, Mississippi Field Office, yielded 63 pages of records, three of which were released in part. Myrick Decl. ¶ 7. Because plaintiff's name was "mentioned in five 'related' files that

---

[6]       Presumably the EOUSA will agree to release the remaining documents upon plaintiff's request and upon payment of the copying fees. The parties are free to make such an arrangement, but its completion is not a matter upon which the Court must rule.

were identified as a result of the records search," *id.*, plaintiff was offered an opportunity to request a manual search of these related files:

> Each referenced file takes approximately two hours to hand search. Our records show the subject of the request to be mentioned in five files. You will be responsible for the search fee for four files, two hours per file, $28.00 per hour, for an approximate total of $224.00.

*Id.*, Ex. E at 1. Plaintiff was directed to indicate in writing that he would be responsible for payment of the search fees, and he was informed that the agency would send him a final bill upon completion of its response to the request. *Id.* at 2. Plaintiff did not agree to pay the search fees. Myrick Decl. ¶ 7. He did, however, pursue an administrative appeal to the OIP with respect to the DEA's decision to withhold in full 63 pages of responsive records. *Id.* ¶ 8; Pl.'s Opp'n at 4.

Plaintiff states that his "desire was to concentrate all efforts on the investigation file(s) that resulting in [his] indictment and/or arrest." Pl.'s Opp'n at 4. He does not challenge the agency's motion on this ground, and defendant's motion will be granted in part.

## C. Adequacy of Searches

Upon receipt of a request under the FOIA, an agency must search its records for responsive documents. *See* 5 U.S.C. § 552(a)(3)(A). "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see also Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998); *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). The agency bears the burden of showing that its search was calculated to uncover all relevant documents. *See, e.g., Steinberg v. United States*

*Dep't of Justice*, 23 F.3d at 551.  To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search.  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982).  In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Id*. at 127.  On the other hand, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper."  *Truitt v. Dep't of State*, 897 F.2d at 542; *see also Valencia-Lucena v. U.S. Coast Guard*, 180 F. 3d at 326.

## 1.  BATFE

The Treasury Enforcement Communications System ("TECS") "is a text-based database[] owned by the Bureau of Customs and Border Protection, Department of Homeland Security, which contains information that may be of interest to law enforcement agencies." Graham Decl. ¶ 73.  TECS is used "to identify individuals and businesses suspected of or involved in violation of federal law," and also serves as "a communications system permitting message transmittal between Federal law enforcement offices and other international, state, and local law enforcement agencies."  *Id.*  It also provides access to federal databases such as the FBI's National Crime Information Center ("NCIC") and the National Law Enforcement Telecommunication System ("NLETS").  *Id.*  BATFE's records within TECS pertain to wanted persons and fugitives, known and suspected violators of laws under BATFE's jurisdiction, felons and dishonorably discharged veterans who request permission to possess firearms, violent felons, gangs, and terrorists.  *Id.*  There are seven subsections of TECS: people, businesses, aircraft, firearms, vehicles, vessels and "things," *id.*, and TECS queries under these subsections "reveal

ATF Investigation numbers . . . correspond[ing] to a specific field division where any records would be located." *Id.* ¶ 74. TECS, then, "contains the names of the individuals [BATFE] has investigated, and it is the place most likely to locate" records responsive to plaintiff's FOIA request. *Id.* ¶ 73.

Using plaintiff's full name as a search term, a TECS query located responsive records at the New Orleans Field Division in the Biloxi, Mississippi Field Office under Case No. 777015-02-0093. Graham Decl. ¶ 75.

## 2. FBI

With its Central Records System ("CRS"), the FBI maintains "administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes." Hardy Decl. ¶ 21. The "CRS is organized into a numerical sequence of files called FBI 'classifications,' which are broken down according to subject matter," and which "may correspond to an individual, organization, publication, activity, or foreign intelligence matter or program." *Id.* Certain records in the CRS are maintained at FBIHQ; others are maintained at the pertinent field office. *Id.* In order to search the CRS, the FBI uses the Automated Case Support System ("ACS"). *Id.*

The ACS is "described as an internal computerized subsystem of the CRS." Hardy Decl. ¶ 22. One cannot query the CRS for data such as an individual's name or social security number; to allow for such a query, "the required information is duplicated and moved to the ACS so that it can be searched." *Id.* Data is retrieved from the CRS through the ACS using alphabetically arranged General Indices. *Id.* ¶ 23. There are two categories of General Indices:

"main" entries and "reference" entries. *Id.* The former category "carries the name corresponding with a subject of a file contained in the CRS," and the latter (also known as cross-references) category is "generally only a mere mention or reference to an individual . . . or other subject matter[] contained in a document located in another 'main' file on a different subject matter." *Id.*

There are "three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases." Hardy Decl. ¶ 25. They are Investigative Case Management ("ICM"), Electronic Case File ("ECF"), and Universal Index ("UNI") applications. *Id.* The ICM allows for the opening, assignment, and closing of investigative and administrative cases, and for the assignment and tracking of leads. *Id.* ¶ 25(a). When a case is opened, it is assigned a Universal Case File Number which is used by the FBI headquarters and all field offices conducting or assisting in an investigation. *Id.* The first three digits correspond to the classification for the type of investigation; a two-letter abbreviation indicates the field office of origin, and the last digits denote the individual case file number for a particular investigation. *Id.* Plaintiff's file number, 245F-JN-25002, indicates that the Jackson, Mississippi field office conducted an investigation of a major criminal organization and that the individual case file was assigned number 25002. *Id.*

The ECF is the "central electronic repository for the FBI's official text-based documents." Hardy Decl. ¶ 25(b). The UNI provides "a complete subject/case index to all investigative and administrative cases," *id.* ¶ 25(c), and "functions to index names to cases, and to search names and cases for use in FBI investigations." *Id.* "Names of individuals . . . are recorded with identifying . . . information such as date or place of birth, race, sex, locality, Social Security number, address, and/or date of event." *Id.* The decision to index names other than

subjects or suspects is discretionary and is left to the Special Agent or Supervisory Special Agent in the Field Office conducting the investigation. *Id.* ¶ 26. Only information deemed "pertinent, relevant, or essential for future retrieval" is indexed; otherwise, FBI files "would . . . be merely archival in nature." *Id.* Thus, the General Indices "are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual." *Id.*

Electronic surveillance indices ("ELSUR"), a separate system of records from the CRS, "are used to maintain information on subjects whose electronic and/or voice communications have been intercepted as a result of a warrantless and/or consensual [electronic surveillance] or a court-ordered . . . [electronic surveillance] conducted by the FBI." Hardy Decl. ¶ 27. These indices include individuals who were targets of direct surveillance, participants in monitored conversations, and owners or lessees of the premises where the FBI conducted the electronic surveillance. *Id.* ¶ 28. Field offices include in their ELSUR indices the names of all persons whose voices have been monitored by microphone installation or telephone surveillance, *id.* ¶ 29, as well as the names of persons mentioned during monitored conversations. *Id.* ¶ 26.

One searches the CRS for records concerning a particular subject by the subject's name in the General Indices. Hardy Decl. ¶¶ 24, 26. Using plaintiff's full name (Jesse Manuel Skinner) and variants thereof, as well as his date and place of birth and Social Security number as search terms, *id.* ¶ 31, a CRS search for records maintained by FBIHQ in response to FOIPA Nos. 1086283-000 and 1086209-000 yielded no main files responsive to the request. *Id.* ¶¶ 31-32. A CRS search of JNFO records using the same search terms "located a potentially responsive cross-reference in file number 245F-JN-25002." *Id.* ¶ 33. At that time, "[d]ue to the

lack of identifying information on the document, the FBI was unable to determine if this document was in fact responsive to plaintiff's request." *Id.* The FBI conducted another CRS search of FBIHQ and JNFO records using the same search terms and a review of file number 245F-JN-25002, and then was able to determine that the file in fact was responsive to plaintiff's request. *Id.* ¶ 34. Its ELSUR search yielded no responsive records. *Id.* ¶ 35.

### 3. DEA

The DEA interprets plaintiff's request "broadly . . . as a request for any and all criminal investigative information about himself," and deemed its Investigative Reporting and Filing System ("IFRS"), which contains all criminal investigative files compiled by the DEA, the place were responsive records likely would be found. Myrick Decl. ¶ 25. In order to retrieve information from IFRS, one uses the Narcotics and Dangerous Drugs Information System ("NADDIS"), an index which "points to investigative files and particular Reports of Information ("ROIs") or other documents . . . contain[ing] information regarding a particular individual or subject of an investigation." *Id.* ¶ 26. "Individuals are indexed and identified in NADDIS by their name, Social Security Number, and/or date of birth." *Id.*

DEA staff conducted a NADDIS query using plaintiff's name, Social Security number, and date of birth as search terms, and six criminal investigative files were located. Myrick Decl. ¶ 27. One "defendant" file pertained to plaintiff, and five "related" files pertained to other individuals. *Id.* The DEA processed the "defendant" file at no charge to plaintiff. *Id.*

Plaintiff presents no challenge to any of the components' searches for records responsive to the FOIA requests relevant to this action. Rather, he devotes his opposition

principally to defendant's failure to search for and produce medical records of two DEA Special

Agents who were injured by shotgun pellets in the course of execution of a search warrant and

the FBI's response to FOIA Request No. 1011170-000 submitted in December 2004.  *See* Pl.'s

Opp'n at 6-17.  But these matters are not a part of this case.  Nowhere in the complaint does

plaintiff mention either a request for third parties' medical records or the December 2004 FOIA

request, so the Court will not address these matters further.[7]  Absent any meaningful opposition

to defendant's motion with respect to the searches for records responsive to plaintiff's FOIA

requests, and based on the defendant's supporting declarations, the Court concludes that the

searches were reasonably calculated to locate responsive records.

### *D.  Exemptions*

Generally, plaintiff opposes each component's decision to withhold in part or in

full any of the information he has requested.  *See* Compl. at 8; Pl.'s Opp'n at 17-19.  The Court

therefore declines to treat defendant's motion as conceded and proceeds to address each claimed

exemption in turn.

---

[7]     Because plaintiff's complaint does not mention FBI Request No. 1011170-000, submitted to the FBI on or about December 10, 2004, plaintiff's "Motion for FBI to Turn Over All Information I.E. FBI Request No. 1011170-000 To Plaintiff" [Dkt. #24] will be denied.

1. Exemption 2[8]

Exemption 2 shields from disclosure information that is "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The phrase "personnel rules and practices" is interpreted to include not only "minor employment matters" but also "other rules and practices governing agency personnel." *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d 1051, 1056 (D.C. Cir. 1981) (en banc). The "information need not actually *be* 'rules and practices' to qualify under [E]xemption 2, as the statute provides that matter 'related' to rules and practices is also exempt." *Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 795 (D.C. Cir. 1990) (emphasis in original). Exemption 2 applies if the information sought meets two criteria. First, such information must be "used for predominantly internal purposes." *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d at 1074; *see also Public Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 869 (D.C. Cir. 2009); *Nat'l Treasury Employees Union v. U.S. Customs Serv.*, 802 F.2d 525, 528 (D.C. Cir. 1985). Second, the agency must show either that "disclosure may risk circumvention of agency regulation," or that "the material relates to trivial administrative matters of no genuine public interest." *Schwaner v. Dep't of the Air Force*, 898 F.2d at 794 (citations omitted); *see also Public Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d at 869.

"Predominantly internal documents the disclosure of which would risk circumvention of agency statutes are protected by the so-called 'high 2' exemption." *Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1207 (D.C. Cir. 1992), and such "high 2" exempt

---

[8]     Where the FBI withholds information under Exemption 2 in conjunction with Exemption 7(E), the Court will address the arguments below in its discussion of Exemption 7(E).

information is "not limited . . . to situations where penal or enforcement statutes could be circumvented." *Id*. at 1208. If the material at issue merely relates to trivial administrative matters of no genuine public interest, it is deemed "low 2" exempt material. *See Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828, 830-31 n.4 (D.C. Cir. 1983). "Low 2" exempt materials include such items as "file numbers, initials, signature and mail routing stamps, references to interagency transfers, and data processing references," *Scherer v. Kelley*, 584 F.2d 170, 175-76 (7th Cir. 1978), and other "trivial administrative data such as . . . data processing notations[] and other administrative markings." *Coleman v. Fed. Bureau of Investigation*, 13 F. Supp. 2d 75, 78 (D.D.C. 1998) (citation omitted).

a.  "Low 2" Exempt Information

The BATFE withholds "file numbers and other internal administrative codes," Graham Decl. ¶ 44, intended for administrative purposes only and of no genuine interest to the public. *Id.* This "low 2" exempt information includes laboratory case numbers, *id.* ¶ 45, and picture file numbers. *See id.*, *Vaughn* Index (pages 101-102). The DEA withholds one "internal, operational telephone number" on the ground that it is of no public interest. Myrick Decl. ¶ 49. In the alternative, its declarant states that release of the telephone number "could enable violators to identify law enforcement personnel, disrupt official DEA business, and subject DEA employees to harassing phone calls." *Id.*

The Court concludes that BATFE properly withheld this information under Exemption 2. Internal file numbers, case numbers and telephone numbers fall within the scope of Exemption 2, and properly are withheld as "low 2" exempt information. *See, e.g., Zavala v.*

*Drug Enforcement Admin.*, 667 F. Supp. 2d 85, 97-98 (D.D.C. 2009) (withholding DEA

Originating Agency Identification numbers, internal telephone and facsimile numbers under

Exemption 2), *aff'd*, No. 09-5357, 2010 WL 2574068 (D.C. Cir. June 7, 2010) (per curiam),

*petition for cert. filed*, __ U.S.L.W. ___ (U.S. Sept. 3, 2010) (No. 10-6438); *James v. U.S.*

*Customs and Border Protection*, 549 F. Supp. 2d 1, 8-9 (D.D.C. 2008) (concluding that

"telephone, facsimile numbers, administrative markings . . . relating to internal file control

systems, [and] administrative codes and computer codes . . . of internal agency information

systems" are properly withheld under Exemption 2).

### b. "High 2" Exempt Information

The BATFE withholds "information contained in the Treasury Enforcement

Communications System (TECS), a law enforcement database used . . . to conduct criminal

history checks." Graham Decl. ¶ 46. It redacts information displayed on printouts which

"identifies the terminal from which a query was accomplished by a terminal ID and a logical unit

ID to show its mainframe connection," as well as information "relat[ing] to the software

applications that identify how the displayed record was retrieved: specifically, the software

program mapping codes, the routing codes within the program that allows the query to move

from screen to screen, and the codes that allow movement to other programs from the displayed

screen." *Id.* The declarant represents that disclosure of this "sensitive codes information" in the

possession of "computer literate individuals with mainframe knowledge[] could provide

information on the structure of the mainframe system . . . and expose the system to

circumvention." *Id.* Further, she states that disclosure "could facilitate unauthorized access to

TECS and other [BATFE] databases" which could, in turn "interfere with investigations and law enforcement activities at all levels." *Id.* Applying this same rationale, the declarant explains that the BATFE also withholds computer codes from other federal and local law enforcement databases. *Id.* ¶ 47.

Relevant case law fully supports the BATFE's decision to withhold this sensitive code and computer information under Exemption 2. *See Lewis-Bey v. U.S. Dep't of Justice*, 595 F. Supp. 2d 120, 131-32 (D.D.C. 2009) (concluding that BATFE properly redacted internal administrative codes relating to law enforcement and firearms tracing databases where their release "could allow an individual "knowledgeable in computer mainframes and systems to try to circumvent the database and interfere with enforcement proceedings"); *Singh v. Fed. Bureau of Investigation*, 574 F. Supp. 2d 32, 44 (D.D.C. 2008) (withholding computer codes appearing on printouts from Immigration and Naturalization Service Central Index System); *Boyd v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 496 F. Supp.2 d 167, 171 (D.D.C. 2007) (withholding data displayed on screen prints of Treasury Enforcement Communications System records identifying the terminal from which a query was made and its connection to the mainframe, as well as information pertaining to software applications); *Ferranti v. Bureau of Alcohol, Tobacco & Firearms*, 177 F. Supp. 2d 41, 45 (D.D.C. 2001) (withholding internal computer codes).

The FBI withholds as "high 2" exempt information a cooperative witness file number, which is "unique to this particular cooperative witness and [which] is only used in documentation relating to this particular . . . witness." Hardy Decl. ¶ 46. Its declarant explains that a cooperating witness' identity "is concealed until testimony is required at trial and who . . . contributes substantial operational assistance to the resolution and/or direction of a case through

28

active participation in the investigation." *Id.* According to the declarant, release of the cooperative witness file number "could ultimately identify the source," particularly if release is repeated along with information the witness provided, "narrow[ing] the possibilities of the [source's] true identity, endangering his/her life and physical safety." *Id.* ¶ 47. The witness expressly is granted confidentiality whether or not he or she appears in court. *Id.* "[B]ecause the cooperative witness file number is related solely to the FBI's internal practices, because disclosure . . . would not serve any public interest, and because disclosure . . . would impede the effectiveness of the FBI," *id.*, the FBI withholds the cooperative witness file number.

Employing a similar rationale, the DEA withholds Geographical Drug Enforcement Program ("G-DEP") codes, NADDIS numbers, and a confidential informant number, all of which are "part of DEA's internal system of identifying information and individuals." Myrick Decl. ¶ 46. A G-DEP code is assigned when the agency opens a case file and it is used to "indicate the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity." *Id.* ¶ 46.a. Release of G-DEP codes, the declarant explains, "would help [suspects] identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings," *id.* ¶ 47, allowing suspects to alter their behavior so as to avoid detection and otherwise thwart the DEA's investigative and law enforcement efforts. *Id.*

NADDIS numbers are "multi-digit numbers assigned to drug violators and suspected drug violators known to the DEA." Myrick Decl. ¶ 46.b. A NADDIS number is unique to the violator to whom it is assigned. *Id.* Informant identifier codes are assigned "to cooperating individuals and are used instead of their names in all DEA reports, memoranda and

other internal correspondence.  *Id.* ¶ 46.c.  "Knowledge of informant identifier codes can assist in identifying the informant and provide sensitive information about individuals who cooperate with DEA in carrying out its law enforcement functions."  *Id.*[9]

The Court concludes that the FBI and the DEA properly withhold the records just discussed under Exemption 2.   The reference numbers assigned to witnesses and witness files, as well as G-DEP codes, NADDIS numbers and other such codes, are all within the scope of Exemption 2 and are properly withheld.  *See Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 486 (D.C. Cir. 1980) (withholding "symbols used to refer to FBI informants in FBI documents and records"); *Zavala v. Drug Enforcement Admin.*, 667 F. Supp. 2d at 96-97 (withholding G-DEP codes and NADDIS numbers); *Amuso v. U.S. Dep't of Justice*, 600 F. Supp. 2d 78, 91 (D.D.C. 2009) (withholding confidential source file numbers assigned by the FBI); *Barbosa v. Dep't of Justice*, No. 06-0867, 2007 WL 1201604, at *3 (D.D.C. Apr. 23, 2007) (withholding violator identifiers consisting of G-DEP codes, NADDIS numbers, and confidential informant numbers which are part of the agency's internal system of identifying information and individuals); *Wilson v. Drug Enforcement Admin.*, 414 F. Supp. 2d 5, 12-13 (D.D.C. 2006) (withholding G-DEP codes and NADDIS numbers as "high 2" exempt information, and withholding NADDIS numbers as "low 2" exempt information insofar as they are part of the DEA's internal system of identifying information in which there is no public interest).

---

[9]    The DEA invokes Exemption 2 in conjunction with Exemption 7(C), 7(D), and 7(F) to withhold NADDIS numbers and informant identifier codes.  Myrick Decl. ¶¶ 46.b., 46.c., 48.  Because the Court concludes that these codes properly are withheld under Exemption 2, there is no need to consider the applicability of any other exemption.  *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1994).

## 2. Exemption 3

Exemption 3 protects records that are "specifically exempted from disclosure by statute . . . provided that such statute (A) [requires withholding] in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552 (b)(3).  Under Exemption 3, the BATFE withholds Firearms Trace Reports and Federal Firearms Licensees ("FFL") Acquisition and Disposition Records.  Graham Decl. ¶¶ 49, 50.  The Consolidated Appropriations Act of 2005, Pub. L. No. 108-447, 118 Stat. 2809 (2004), provides in relevant part:

> [N]o funds appropriated under this or any other Act with respect to any fiscal year may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms, and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g), to anyone other than a Federal, State, or local law enforcement agency or a prosecutor solely in connection with and for use in a bona fide criminal investigation or prosecution.

*Id.*

The BATFE's declarant explains that the "Firearms Trace Reports [are] wholly derived from the contents of the Firearms Trace Systems Database referenced in Public Law 108-447 and Acquisition Disposition records required to be kept by the FFLs."  Graham Decl. ¶ 51.  Through the Consolidated Appropriations Act, Congress expressly prohibits disclosure of information in the Firearms Trace System Database and information maintained pursuant to 18 U.S.C. § 923(g).  The BATFE therefore has properly withheld the Firearms Trace Reports under Exemption 3.  *See Singh v. Fed. Bureau of Investigation*, 574 F. Supp. 2d at 45-46; *Miller v. U.S.*

*Dep't of Justice*, 562 F. Supp. 2d 82, 111-12 (D.D.C. 2008); *Antonelli v. Bureau of Alcohol,*

*Tobacco, Firearms & Explosives*, No. 04-1180, 2006 WL 3747312, at *2 (D.D.C. Dec. 18,

2006); *Watkins v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 04-800, 2005 WL

2334277, *1 (D.D.C. Sept. 1, 2005) (concluding that 2005 appropriations legislation "prevent[s]

the public release of sensitive firearms trace data not so much for budgetary reasons than out of

concern that such disclosures could jeopardize criminal investigations").

### 3. Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a]

or letters which would not be available by law to a party other than an agency in litigation with

the agency." 5 U.S.C. § 552(b)(5). "[T]he parameters of Exemption 5 are determined by

reference to the protections available to litigants in civil discovery; if material is not 'available'

in discovery, it may be withheld from FOIA requesters." *Burka v. U.S. Dep't of Health &*

*Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996); *see Nat'l Labor Relations Bd. v. Sears,*

*Roebuck & Co.*, 421 U.S. 132, 148 (1975); *Public Citizen, Inc. v. Office of Mgmt. & Budget*, 598

F.3d at 874.

The deliberative process privilege "shields only government 'materials which are

both predecisional and deliberative.'" *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 616

(D.C. Cir. 1997) (quoting *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C.

Cir. 1988) (en banc)). A document is "predecisional if it was generated before the adoption of an

agency policy," and it is "deliberative if it reflects the give-and-take of the consultative process."

*Public Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d at 874 (quoting *Judicial Watch, Inc. v.*

*Food & Drug Admin.*, 449 F.3d 141, 151 (D.C. Cir. 2006)). To show that a document is predecisional, the agency need not identify a specific final agency decision; it is sufficient to establish "what deliberative process is involved, and the role played by the documents at issue in the course of that process." *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)). A document is "deliberative" if it "makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975). The deliberative process privilege is thought to "prevent injury to the quality of agency decisions." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. at 151. Such protection encourages frank discussion of policy matters, prevents premature disclosure of proposed policies, and avoids public confusion that may result from disclosure of rationales that were not ultimately grounds for agency action. *See, e.g., Public Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d at 874 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d at 866); *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982).

Attorney work product is among the types of material that is not available in discovery, *see*, *e.g.*, *Fed. Trade Comm'n v. Grolier, Inc.*, 462 U.S. 19, 27 (1983), and the attorney work-product privilege protects material gathered and memoranda prepared by an attorney in anticipation of litigation. *See Hickman v. Taylor*, 329 U.S. 495 (1947). Records are properly withheld as attorney work product if they contain the "mental impressions, conclusions, opinions or legal theories of an attorney" and were "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3). The privilege also "covers factual materials prepared in anticipation of litigation." *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d at 8 (citing *Tax Analysts v. Internal Revenue*

*Serv.*, 117 F.3d at 620).  Attorney work product can be protected under the deliberative process privilege.  *Id.* at 7.

Under Exemption 5, the BATFE withheld in full "[e-]mails used in pre-decisional investigatory strategy in preparation for litigation."  Graham Decl. ¶ 54.  These messages "were prepared by ATF Special Agents and ATF attorneys in conjunction with the investigation into, and the subsequent prosecution for, violations of . . . drug-related crimes, assaulting a federal officer, and possessing an unregistered destructive device[.]" *Id.* ¶ 55.  The declarant explained that the e-mails pertained to "legal implications of the investigation," and reflected "a candid discussion of the strengths and weaknesses of the [BATFE's] case against the [p]laintiff." *Id.* ¶ 59.  In addition, the e-mails contained "an internal agency attorney's analysis and recommendations regarding the [p]laintiff's violation of Federal criminal laws." *Id.* ¶ 60. Among other harms, the declarant has asserted that release of these e-mails "would inhibit the candid, internal discussion necessary for efficient and proper litigation preparation in these types of complex cases," and also "would provide insight into the agency's general strategic and tactical approach to investigating and prosecuting such cases." *Id.* ¶ 58.  In addition, their protection would foster discussion between agents and attorneys, "free of the fear that their thought processes, investigative strategies, and case evaluations will . . . be made available to the public." *Id.* ¶ 57.

The Court finds that the BATFE has established that the e-mail messages at issue are predecisional and deliberative, as the information pertained to a then-ongoing criminal investigation of plaintiff and others.  The BATFE also has shown that the messages include attorney work product prepared in anticipation of criminal proceedings, as well as privileged

conversations between an agency attorney and the agents investigating a case. Consequently, this information is protected from disclosure and properly is withheld under Exemption 5.

### 4. Exemption 7

### a. Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982). In order to withhold materials properly under Exemption 7, an agency must establish that the records at issue were compiled for law enforcement purposes, and that the material satisfies the requirements of one of the subparts of Exemption 7. *See Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982).

The conduct leading to plaintiff's arrest and criminal conviction has been described as follows:

> On July 2, 2002, on property located at 15376 Big John Road in Biloxi, Mississippi, law enforcement officials discovered methamphetamine precursors in a trash can that had been placed on the roadside for trash collection. Acting on this discovery, the Mississippi Bureau of Narcotics (MBN) secured a search warrant to search the property. Agents from the [DEA, BATFE], the Biloxi Police Department, and MBN all participated in execution of the search warrant.

> During execution of the search warrant, agents attempted to gain entry into a 20-21 foot camper trailer located on the property. While the agents were prying the door of the trailer to gain access inside, a shotgun trap set near the camper discharged, wounding two of the officers, Agents Craig Shows and John Bordages.

> When agents finished executing the search warrant the following day,

several types of drugs were seized including LSD, marijuana and methamphetamine. Materials suspected to be used in the manufacture of methamphetamine and other drug paraphernalia were also found.

*United States v. Skinner*, No. 1:02cr93-BrG, 2009 WL 2030427, at *1 (S.D. Miss. July 14, 2009).

"On July 2, 2002[,] the DEA arrested [plaintiff] for shooting two DEA agents as they attempted to execute [the] search warrant." Hardy Decl. ¶ 6. Plaintiff "was charged with endangering human life while illegally manufacturing a controlled substance." Myrick Decl. ¶ 71. On June 9, 2003, a jury convicted plaintiff of the following crimes: Possession with Intent to Distribute 100 Doses of Ecstasy; Possession of Pseudoephedrine for Manufacture of Controlled Substance; Conspiracy to Manufacture in Excess of 50 Grams of Methamphetamine; Possession with Intent to Distribute More than One Gram of LSD; Assault on a Law Enforcement Officer (two counts); Receiving and Possessing an Unregistered Destructive Device; Making False Statements to a Licensed Firearms Dealer; and Conspiracy to Import Ecstasy and LSD. *United States v. Skinner*, 2009 WL 2030427, at *1. Plaintiff was sentenced to a total of 540 months' imprisonment. *Id.* According to the BOP's Inmate Locator, presently plaintiff is incarcerated at the at the United States Penitentiary - Lee in Jonesville, Virginia, and his projected release date is November 2, 2041.

The FBI's declarant explains that the FBI, the Internal Revenue Service ("IRS"), the DEA and the Gulfport Police Department "conducted a joint investigation which targeted a drug distribution criminal enterprise in Harrison County, Mississippi." Hardy Decl. ¶ 5. He further explains that the investigation's primary subjects "laundered illegal drug money through night clubs and strip clubs; secondary subjects such as . . . plaintiff . . . sold the various

36

controlled substances that generated the money." *Id.* The records responsive to plaintiff's FOIA request to the FBI "pertain to the investigation of . . . plaintiff's involvement in criminal activities related to the illegal possession and distribution of [] controlled substances." *Id.* ¶ 49.

The DEA's declarant states that the agency's responsive records "were compiled during criminal law enforcement investigations of the plaintiff and several third-parties." Myrick Decl. ¶ 50. These records include reports of drug property collected, purchased or seized, reports of investigation, receipts for cash or other items, voluntary statements, an interview transcript, a portion of an affidavit, and a diagram. *Id.* ¶ 44. The BATFE's declarant explains that the relevant BATFE records were compiled in furtherance of its law enforcement responsibilities which include enforcement of Federal firearms laws. Graham Decl. ¶ 61.

The declarants have established, and plaintiff does not dispute, that the BATFE, the FBI and the DEA are law enforcement agencies, and each component easily meets Exemption 7's threshold requirement by establishing that the records at issue were compiled for law enforcement purposes.

b. Exemption 7(C)[10]

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). In determining whether this exemption applies to particular material,

---

[10] It is the FBI's practice to assert Exemption 6 in conjunction with Exemption 7(C). Hardy Decl. at 21 n.13. Because the Court concludes that the names of and identifying information about the third parties mentioned in the FBI's responsive records properly are withheld under Exemption 7(C), there is no need to consider the applicability of any other exemption. *See Simon v. Dep't of Justice*, 980 F.2d at 785.

the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure. *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007); *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). The privacy interest at stake belongs to the individual, not the government agency, *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989); *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) (noting individual's significant privacy interest "in avoiding the unlimited disclosure of his or her name and address"), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity." *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. at 773); *see also Sussman v. U.S. Marshals Serv.*, 494 F.3d at 1115. It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant. *See Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

i. Law Enforcement Agents, Officers and Support Personnel

The BATFE withholds the names of Federal and state law enforcement agents and other Federal law enforcement employees, as well as information by which those individuals could be identified. Graham Decl. ¶ 64. Its declarant explains that disclosure of their identities "might seriously prejudice their effectiveness in conducting investigations to which they are

assigned and subject them to unwarranted harassment." *Id.* ¶ 66. Plaintiff has identified no "discernible public interest" in this information, and the agency's position is that "revealing this information is unlikely to add to the public's understanding of how an agency works or how well it performs its duties." *Id.* ¶ 67. The declarant states that "the privacy interests of law enforcement personnel substantially outweigh any public interest" in disclosure of their identities, notwithstanding the "fact that the [p]laintiff may know, or be able to independently determine the identities of some agents or other law enforcement personnel." *Id.*

Applying a similar rationale, the FBI withholds "the names and/or identifying information (such as telephone numbers and social security numbers) of FBI [Special Agents], individuals who served as task force officers, and support personnel who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in the documents concerning plaintiff and others." Hardy Decl. ¶ 52. Among other tasks, these individuals interviewed cooperating witnesses and sources and reviewed materials compiled in the course of the investigation. *Id.* The FBI declarant states that Special Agents' and task force officers' assignments "are not by choice," and that "[p]ublicity (adverse or otherwise) regarding any particular investigation . . . may seriously impact their effectiveness in conducting other investigations." *Id.* ¶ 53. Disclosure of their identities may result in "unnecessary, unofficial questioning as to the conduct of this or other investigations, whether or not they are currently employed by the FBI." *Id.* The declarant further states that Special Agents "come into contact with all strata of society, while conducting searches and making arrests, both of which result in reasonable but nonetheless serious disturbances" to the persons searched or arrested, and these persons may target or seek revenge on the agents. *Id.*

With respect to FBI support personnel, the declarant states that they "were assigned to handle tasks relating to the official investigation into the activities of plaintiff and others . . . [and they] have been, and may continue to be, in positions with access to information regarding official law enforcement investigations, and therefore could become targets of harassing inquires for unauthorized access to investigations if their identities were released." Hardy Decl. ¶ 54. In the FBI's view, there is no public interest sufficient to outweigh the privacy interests of its Special Agents, task force officers and support personnel. *Id.* ¶¶ 53-54. The FBI also applies this rationale to support its decision to withhold the names of and identifying information about Gulfport Police Department officers, *id.* ¶ 62, other federal government personnel, including IRS and DEA agents, DEA lab technicians, and federally deputized local government employees involved in the investigation of plaintiff and others. *Id.* ¶ 64.

The DEA withholds "names and other identifying information which would reveal the identity of and disclose personal information about individuals who were involved or associated with . . . [this] law enforcement investigation." Myrick Decl. ¶ 51. Its declarant explains that DEA Special Agents, other law enforcement officers and support personnel "were assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff and other individuals," and that they were, and possibly still are, in positions of access to information regarding other law enforcement investigations." *Id.* ¶ 55. According to the declarant, release of their identities could make them "targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations" and would

"constitute an unwarranted invasion of their personal privacy." *Id.* The DEA said it could

identify no public interest served by release of this information. *Id.*[11]

### ii. Other Third Parties Mentioned in Law Enforcement Records

The BATFE withholds the names of and identifying information about third

parties investigated by the BATFE, who are "described in sufficient detail to allow for . . .

identification . . . by persons familiar with the circumstances and facts of the [BATFE's]

investigation." Graham Decl. ¶ 68. Where the BATFE has withheld records in full under

Exemption 7(C), it does so in order "to protect the individual from identification by handwriting,

voice and . . . witness accounts which could be attributed only to that individual." *Id.* According

to the declarant, disclosure of information about witnesses has "the very real potential to

endanger [them] or cause harassment and harm to [their] lives and reputation." *Id.* Taken into

account is plaintiff's criminal history, particularly the assault on federal officers, as evidence of a

propensity to violence and a capacity to harm human beings. *Id.* The declarant explains that

disclosure of witness information "may well discourage future witnesses from cooperating with

[the BATFE]." *Id.* The agency has determined that disclosure of this third party information

could reasonably be expected to cause the third parties embarrassment, harassment or harm,

while doing "little, if anything at all, to aid the public's understanding" of the agency. *Id.*

---

[11] The DEA withholds the names of DEA Special Agents, Supervisory Special Agents, [BATFE] Special Agents, state/local law enforcement officer, and confidential sources" under both Exemption 7(C) and Exemption 7(F). *See* Myrick Decl. ¶¶ 51, 54-55, 60-62. Because the Court concludes that this information properly is withheld under Exemption 7(C), it need not address whether Exemption 7(F) also applies. *See Simon v. Dep't of Justice*, 980 F.2d at 785.

The FBI withholds the names of and identifying information (such as addresses, dates of birth, social security numbers, and telephone numbers) about third parties "interviewed by the FBI during the course of the FBI's investigation of plaintiff and others," Hardy Decl. ¶ 55, individuals "only incidentally mentioned" in these investigative records," *id.* ¶ 58, and third parties "of investigative interest" to the FBI, the IRS, the DEA or the Gulfport Police Department. *Id.* ¶ 60. Its declarant explains that "[t]he largest roadblock to successfully obtaining the desired information through an interview" is the interviewee's "fear . . . that his/her identity will . . . be exposed and consequently [that] he/she could be harassed, intimidated, or threatened with legal, economic . . ., or possible physical harm." *Id.* ¶ 56. To address this fear, the FBI seeks to assure interviewees "that their names and personal identifying information will be held in the strictest confidence." *Id.* The agency concludes, then, that the interviewees' substantial privacy interest in not having their identities disclosed outweighs a public interest in disclosure. *Id.* ¶ 57.

With respect to those merely mentioned in the FBI's records, the declarant explains that disclosure of their identities in connection with a criminal investigation of the plaintiff "could cause unsolicited and unnecessary attention to be focused on [them] and/or their family members," and also "could cast them in an unfavorable or negative light[.]" Hardy Decl. ¶ 58.

With respect to persons of investigative interest, the declarant states that such persons also have privacy interests which outweigh a public interest in disclosure of their identities. Hardy Decl. ¶¶ 60-61. Accordingly, the FBI withholds their names and other identifying information (such as aliases, addresses, physical descriptions, dates of birth, and

Social Security numbers) on the ground that disclosure linking them to a law enforcement investigation "carries a strong negative connotation and stigma," such that they could be subjected to "harassment or embarrassment, as well as undue public attention." *Id.* ¶ 60.

The DEA also withholds the names of and identifying information about "innocent third parties, witnesses, suspects, co-defendants, and confidential sources of information" under Exemption 7(C). Myrick Decl. ¶ 51. According to the declarant, release of this information "may [cause them to] suffer undue invasions of privacy, harassment, and humiliation from disclosure of their identities in the context of a criminal law enforcement investigatory file." *Id.* ¶ 54.

Exemption 7(C) recognizes that the stigma of being associated with any law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for disclosure. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. at 773-75; *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d at 1205-06. Redaction of the names of federal, state and local law enforcement personnel and support staff under circumstances similar to those described here has routinely been upheld for the reasons stated by these declarants. *See, e.g., Lesar v. U.S. Dep't of Justice*, 636 F.2d at 487 (finding legitimate interest in concealing the identities of government officials where disclosure "could subject them to annoyance or harassment in either their official or private lives").

The exemption "takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity." *Dunkelberger v. U.S. Dep't of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990)

(internal quotation marks omitted); *see also Sussman v. U.S. Marshals Serv.*, 494 F.3d at 1115 (holding that Exemption 7(C) protects "the privacy interests of all persons mentioned in law enforcement records, whether they be investigators, suspects, witnesses, or informants," and their names are "generally exempt from disclosure"). Accordingly, "[t]he D.C. Circuit has consistently held that Exemption 7(C) protects the privacy interests of all persons mentioned in law enforcement records, including investigators, suspects, witnesses, and informants." *Fischer v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34, 47 (D.D.C. 2009) (citing *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003)); *see also Zavala v. Drug Enforcement Admin.*, 667 F. Supp. 2d at 100. In accordance with these rulings, the Court concludes that the BATFE, the FBI and the DEA properly withheld the names of and identifying information about federal and local law enforcement officers and support personnel, confidential sources, witnesses, interviewees, persons of investigative interest, and innocent third parties mentioned in the law enforcement records relevant to this case.

### c. Exemption 7(D)

Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . ., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). There is no general "presumption that a source is confidential within the meaning of Exemption 7(D) whenever [a] source provides information [to a law enforcement

agency] in the course of a criminal investigation." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993). Rather, a source's confidentiality must be determined on a case-by-case basis, *id*. at 179-80, and a presumption of confidentiality arises only in narrowly defined circumstances, *id.* at 181 ("For example, when circumstances such as the nature of the crime investigated and the witness' relation to it support an inference of confidentiality, the Government is entitled to a presumption."). "A source is confidential within the meaning of [E]xemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'" *Williams v. Fed. Bureau of Investigation*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (quoting *U.S. Dep't of Justice v. Landano*, 508 U.S. at 170-74).

i. Express Assurance of Confidentiality

Where a law enforcement agency relies on express assurances of confidentiality to justify its decision to withhold information under Exemption 7(D), it must offer "probative evidence that the source did in fact receive an express grant of confidentiality." *Campbell v. U.S. Dep't of Justice*, 164 F.3d at 34 (quoting *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1061 (3d Cir. 1995)). Such evidence may take many forms, such as notations on the face of the withheld document, an official's personal knowledge about the source, a statement from the source, or documents discussing practices or policies for dealing with the source at issue or similarly situated sources. *Id.*

The FBI's declarant explains that the agency withheld "identifying information [about] cooperating witnesses who provided information [to] and cooperated with the FBI, IRS,

DEA, and [Gulfport Police Department] in this criminal investigation of plaintiff[.]" Hardy

Decl. ¶ 71. The information withheld "includes dates of incidents, dates of FBI interviews,

specifics surrounding various encounters, and the nature and circumstances of their association

with [plaintiff] and others." *Id.* ¶ 72. The declarant explains that disclosure of the cooperative

witnesses identities "could subject [the witnesses] to embarrassment, harassment, or violent

reprisal," and "would also have a chilling effect on the activities and cooperation of other FBI

cooperating witnesses." *Id.* ¶ 72. In addition, he explains that these individuals "provided

valuable information concerning [plaintiff's] criminal activities . . . with the express

understanding that their identit[ies] and any information which would tend to identify them

would only be used for law enforcement purposes and not released to the public." *Id.* ¶ 71. The

declarant further states that these individuals were expected to testify in court proceedings, but

even "if their appearance in court is not requested, [they] reserve[] the express assurance of

confidentiality." *Id.*

    The FBI also withholds a cooperative witness file number, which "is unique to the

particular . . . witness . . . [and is] used to document information provided by [him or her]

concern[ing] criminal activities of plaintiff and other third parties." Hardy Decl. ¶ 73.

Disclosure of this file number "would indicate both the scope and location of FBI witness

coverage within a particular area, *id.*, and its release "at various times and in various documents

could ultimately identify the source since it would reveal the connections of this cooperative

witness to the subject matters of these documents." *Id.* ¶ 74. According to the declarant, not

only would repeated release of the cooperating witness file number "narrow the possibilities of

[his or her] true identity, endangering his/her physical safety," *id.*, it "would have a chilling effect on the activities and cooperation of other FBI cooperating witnesses," *id.* ¶ 75.

The DEA's declarant explains that the "investigation of plaintiff involved multiple confidential sources, thus the responsive investigative records are replete with source-related information," some of which was obtained from "'coded' confidential informants with an express assurance of confidentiality." Myrick Decl. ¶ 57. Coded informants "have a continuing cooperative association, by written signed agreement, with [the] DEA [and thus] are assured express confidentiality in their identities and the information they provided to [the] DEA." *Id.*

The FBI's and the DEA's declarants establish that their agencies' respective cooperating witnesses and informants provided information under an express assurance of confidentiality. It follows under the relevant case law that the components' decisions to withhold under Exemption 7(D) information pertaining to the cooperating witnesses or informants described above and the numbers assigned to them is proper. *See, e.g., Putnam v. U.S. Dep't of Justice*, 873 F. Supp. 705, 716 (D.D.C. 1995) (concluding that permanent symbol numbers assigned to confidential sources, file numbers and information that could be used to identify the sources were properly withheld under Exemption 7(D)); *see also Doe v. U.S. Dep't of Justice*, 790 F. Supp. 17, 21 (D.D.C. 1992) (commenting that, when confidential interviewees are well known to the requester, "even the most oblique indications of identity" are protected).

ii. Implied Assurance of Confidentiality

The D.C. Circuit has held that the violence and risk of retaliation attendant to drug trafficking warrant an implied grant of confidentiality to a source. *See Mays v. Drug*

*Enforcement Admin.*, 234 F.3d 1324, 1329 (D.C. Cir. 2000) (withholding source supplying information about conspiracy to distribute crack and powder cocaine). The nature of the crime investigated and the informant's relation to it are the most important factors in determining whether implied confidentiality exists. *U.S. Dep't of Justice v. Landano*, 508 U.S. at 179-80; *Quiñon v. Fed. Bureau of Investigation*, 86 F.3d 1222, 1231 (D.C. Cir. 1996); *Coleman v. Fed. Bureau of Investigation*, 13 F. Supp. 2d 75, 82 (D.D.C. 1998) (finding that plaintiff's conviction "of numerous violent crimes" including murder, rape and kidnaping, as well as "the relation of the witnesses thereto is precisely the type that the implied confidentiality exemption expressed in *Landano* is designed to encompass").

The FBI withholds the name of, identifying information about, and the information provided by a third party to the FBI, the IRS, the DEA and the Gulfport Police Department. Hardy Decl. ¶ 70. Its declarant states that the source "provided specific detailed information that is singular in nature concerning the criminal activities involving plaintiff . . . and his associates," and that the disclosure of his or her identity "could have disastrous consequences" in light of the subjects' drug-related activities, and "could subject [him or her] to harassment or violent reprisal" if his or her cooperation became known. *Id.* Under these circumstances, the declarant states, "it is reasonable to assume that this source would not have provided the information other than under an implied assumption of confidentiality." *Id.*

Similarly, the DEA withholds information that would disclose the identity of, and the information provided by, confidential sources "provided by those about whom . . . confidentiality could be implied." Myrick Decl. ¶ 56. Its declarant states that releasing identifying information about these sources "could subject [them] to serious bodily harm," *id.*

¶ 59, and for this reason the DEA withholds this information under both Exemption 7(D) and

Exemption 7(F).  *Id.*  She further explains that, in the DEA's experience, "the release of Special

Agents' identities has . . . resulted in several instances of physical attacks, threats, harassment

and attempted murder of undercover and other DEA Special Agents." *Id.* ¶ 62.  In light of

plaintiff's past attack on DEA agents, namely the wounding of two DEA task force agents "by a

booby-trapped shotgun device set by plaintiff," *id.* ¶ 61, the agency deems it "reasonable to infer

that releasing the identities of . . . confidential sources would endanger the life or physical safety

of these individuals." *Id.* ¶ 62.

      In determining whether the source provided information under an implied

assurance of confidentiality, the Court must consider "whether the violence and risk of retaliation

that attend this type of crime warrant an implied grant of confidentiality for such a source."

*Mays v. Drug Enforcement Admin.*, 234 F.3d at 1329.  The question has been answered in the

affirmative with respect to "the violence and danger that accompany the cocaine trade," *id.*, gang-

related murder, *U.S. Dep't of Justice v. Landano*, 508 U.S. at 179, and other violent acts

committed in retaliation for witnesses' cooperation with law enforcement.  *See, e.g., Shores v.

FBI*, No. 98-2728, 2002 WL 230756, at *4 (D.D.C. Feb. 2, 2002) (withholding identities and

identifying information of three cooperating witnesses with knowledge of the murder of which

plaintiff was convicted, where plaintiff "subsequently attempted to procure the murder of a

family member of one of the witnesses").

      Courts have also held that persons providing information to law enforcement

entities regarding methamphetamine trafficking operations have done so under an implied

assurance of confidentiality.  *See Mendoza v. Drug Enforcement Admin.*, 465 F. Supp. 2d 5, 13

(D.D.C. 2006); *Chavez-Arellano v. U.S. Dep't of Justice,* No. 05-2503, 2006 WL 2346450, at

*9-10 (D.D.C. Aug. 11, 2006); *see also Engelking v. Drug Enforcement Admin.*, 119 F.3d 980,

981 (D.C. Cir. 1997) (concluding that a source provided information about requester's

methamphetamine distribution operation, which was the subject of "multiple cooperative

investigations by federal, state, and local law enforcement agencies, [and]  which ultimately

resulted in [requester's] conviction following the seizure of two methamphetamine laboratories,

six handguns, and a rifle," under an implied assurance of confidentiality).  The Court concludes

that the FBI and the DEA properly withhold information pertaining to its sources under

Exemption 7(D)'s implied assurance of confidentiality.

### d.  Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records "to the extent

that the production of such law enforcement records or information . . . would disclose

techniques and procedures for law enforcement investigations or prosecutions, or would disclose

guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably

be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Courts have held that

information pertaining to law enforcement techniques and procedures properly is withheld under

Exemption 7(E) where disclosure reasonably could lead to circumvention of laws or regulations.

*See, e.g., Morley v. Cent. Intelligence Agency*, 453 F. Supp. 2d 137, 157 (D.D.C. 2006)

(approving the withholding of information pertaining to security clearances and background

investigations on the ground that "disclosure of CIA security clearance and investigatory

processes would risk circumvention of those processes in the future"), *rev'd on other grounds*,

508 F.3d 1108 (D.C. Cir. 2007); *Piper v. U.S. Dep't of Justice*, 294 F. Supp. 2d 16, 30 (D.D.C. 2003) (approving the withholding of polygraph test information on the ground that disclosure "has the potential to allow a cunning criminal to extrapolate a pattern or method to the FBI's questioning technique," and anticipate or thwart the FBI's strategy); *Fisher v. U.S. Dep't of Justice*, 772 F. Supp. 7, 12 (D.D.C. 1991) (upholding FBI's decision to withhold information about law enforcement techniques where disclosure would impair its future effectiveness and, "within the context of the documents at issue could alert subjects in drug investigations about techniques used to aid the FBI"), *aff'd*, 968 F.2d 92 (D.C. Cir. 1992).

The BATFE withholds information pertaining to firearms toolmark examination techniques and search and arrest warrant techniques, specifically "the circumstances under which the techniques were used, the specific timing of their use, and the specific location where they were employed. Graham Decl. ¶ 70. Its declarant explains that these techniques are not widely known to the public and that their disclosure "would illustrate the agency's strategy in implementing these specific techniques, including the timing of certain actions and the placement of certain agency resources in the implementation of the technique." *Id.* ¶ 71. Disclosure, then, could lead to their decreased effectiveness in future investigations "by allowing subjects to anticipate the circumstances under which search warrants are executed and how toolmarks are identified" and therefore allowing them "to take evasive measures to avoid detection." *Id.*

Under both Exemptions 2 and 7(E), the FBI withholds "FBI Form FD-515[,] . . . a form used by FBI [Special Agents] to report investigative accomplishments . . . [and] submitted at various stages in an investigation to report statistical results such as an arrest, the recovery of

stolen property, and so forth." Hardy Decl. ¶ 77.[12]  In the section captioned "Investigative

Assistance and Techniques Used," the form lists "27 publicly known investigative techniques

and/or assistance of which some were used by the investigative personnel during the

investigation of [plaintiff]." *Id.*  "Opposite each investigative technique and assistance is a rating

column which records a numerical rating from 1-4 for the effectiveness of each

technique/assistance used by investigative personnel during the course of the investigation into

plaintiff's criminal activity." *Id.*  Where the form contains a numerical rating next to one or more

of the listed items, the FBI redacts the entire column "to preclude disclosure of both the

particular investigative techniques used in the investigation and the effectiveness of the

individual techniques." *Id.*  If the rating column were released, plaintiff and other subjects of

investigation "could change their activities and modus operandi in order to avoid detection

and/or surveillance in the future," and this information is withheld "to prevent future

circumvention of the law by the criminal element." *Id.* ¶ 78

The FBI also withholds "procedures and techniques used by the FBI [Special

Agent] during plaintiff's and other primary subjects' drug distribution investigation" under

Exemptions 2 and 7(E).  Hardy Decl. ¶ 79.  If these procedures and techniques were disclosed, its

declarant explains that future FBI undercover operations could be jeopardized if criminals were

to learn how it conducts undercover operations.  *Id.*

Having reviewed the BATFE's and the FBI's declarations and the components'

respective *Vaughn* Indices, and absent any substantive challenge from plaintiff, the Court

---

[12]        As stated previously, under Exemption 2, so-called "high 2" exempt information
encompasses "[p]redominantly internal documents the disclosure of which would risk
circumvention of agency statutes."  *Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d at 1207.

concludes that both properly withheld the information described above. As the declarations have explained, release of the FBI Form FD-515, the FBI's techniques and procedures for conducting investigations and undercover operations, as well as the BATFE's firearms toolmark examination techniques, are protected from disclosure by Exemptions 2 and 7(E). *See, e.g.*, *Showing Animals Respect and Kindness v. U.S. Dep't of Interior*, No. 09-0877, 2010 WL 3191801, at *14 (D.D.C. Aug. 12, 2010) (concluding that videos and photographs properly were withheld in full under Exemption 7(E) because "they reveal specific details of surveillance techniques, including equipment used and location and timing of use, the revelation of which could compromise [the Fish and Wildlife Service's] ability to conduct future investigations at various National Wildlife Refuges"); *Peay v. Dep't of Justice*, No. 04-1859, 2007 WL 788871, at *6 (D.D.C. Mar. 14, 2007) (concluding that the FBI properly redacted the "entire rating column [of form FD-515] in order to protect . . . the specific techniques that were and were not used by the FBI during its investigation of plaintiff and others"); *Perrone v. Fed. Bureau of Investigation*, 908 F. Supp. 24, 28 (D.D.C. 1995) (concluding that the FBI FD-515 form properly is withheld under Exemption 7(E) because "disclosure of this information would help plaintiff or potential criminals predict future investigative actions by the FBI and consequently employ countermeasures to neutralize those techniques").

### III. CONCLUSION

The Court concludes that the BATFE, the FBI, and the DEA conducted searches that were reasonably calculated to locate records responsive to plaintiff's FOIA requests, and that they properly withheld records or portions of records under FOIA Exemptions 2, 5, 7(C), 7(D), and 7(E). On these matters the Court will grant summary judgment for the DOJ. Because the results of the BATFE's referral of records to the Army and the USCIS have not been explained, however, summary judgment will be denied in part. The Court will grant Plaintiff's "Motion for Production of Plaintiff's Free 100 Page's [sic] Unlawfully Being Withheld by the EOUSA and All Other Information's [sic] Unlawfully Being Withheld by the EOUSA," but defers consideration of plaintiff's "Motion for Production of ATF CD Containing Photographs and All Other Photograph's [sic] with Respect to Plaintif[f]'s Instant Civil Action in Possession of the ATF" and its ruling on segregability. An appropriate Order accompanies this Opinion.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:   September 30, 2010