UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

JESSE SKINNER,

        Plaintiff,

v.

UNITED STATES DEPARTMENT
OF JUSTICE, *et al.*,

        Defendants.

Civil Action No. 09-0725 (PLF)

OPINION

        Plaintiff brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the United States Department of Justice ("DOJ") and four of its components. The Court has resolved the claims regarding plaintiff's FOIA requests to the Executive Office for United States Attorneys ("EOUSA") and the Federal Bureau of Investigation ("FBI"). *See Skinner v. U.S. Dep't of Justice*, 744 F. Supp. 2d 185 (D.D.C. 2010).[1] This matter now is before the Court on defendants' renewed motion for summary judgment which addresses three outstanding issues regarding the response of the Bureau of Alcohol,

---

[1] The EOUSA has released 100 pages of records without charge to plaintiff, *see* Defs.' Renewed Mot. for Summ. J., Ex. 1 (Letter to plaintiff from William G. Stewart II, Assistant Director, Freedom of Information & Privacy Staff, EOUSA, dated January 3, 2011). No genuine issues of material fact are in dispute with respect to plaintiff's FOIA request to the EOUSA, and defendants' renewed motion for summary judgment will be granted in this respect.

Tobacco, Firearms and Explosives ("BATFE") to plaintiff's July 3, 2007 FOIA request, assigned No. 08-171.[2]

I. BACKGROUND

> In relevant part, plaintiff's FOIA request to the BATFE read:
> This letter serves as a FOIA request . . . for copies of any and all records created and received by the Biloxi, Mississippi Field Office for the [BATFE] in regards to myself – JESSE SKINNER. In addition, this is a request for an index of any and all files maintained by the [BATFE] in reference to me.

Defs.' Mem. of Points & Authorities. in Supp. of the Mot. to Dismiss In Part, and Alternatively, for Summ. J. ("Defs.' First Mem.") [Dkt. #18], Decl. of Averill P. Graham ("Graham Decl."), Ex. Q (Letter from plaintiff to BATFE, Biloxi, Mississippi Field Office, dated July 3, 2007) at 1. The BATFE released responsive records to plaintiff on three occasions. Initially, it released 100 pages of records on November 21, 2007 at no cost to plaintiff. *Id.*, Graham Decl. ¶ 25. Plaintiff was notified at that time "that some of the pages responsive to his FOIA request had been referred to other agencies where they originated." *Id.*, Graham Decl. ¶ 25. Twelve pages of records were referred to the Department of the Army ("Army"), *id.*, Graham Decl. ¶ 26, and one page was referred to the U.S. Customs and Immigration Services ("USCIS"), *id.*, Graham Decl. ¶ 29. On December 13, 2007, upon receipt of a payment of fees assessed for the search for a copying of the records, the BATFE released more documents. *Id.*, Graham Decl. ¶ 32. Lastly, on

---

[2] Also before the Court are Plaintiff's Motion to Renew Plaintiff's Motion for Defendant DEA to Turn Over to Plaintiff the Medical Records of Craig Shows and John Bordages [Dkt. #61] and Plaintiff's Motion to Order the Defendant DEA to Revise [Its] "Vaughn List" to the Current Status Information In Their Possess and to Release All Information to Plaintiff Immediately [Dkt. #62]. Both motions will be denied.

2

"review of all the documents for litigation," the BATFE released 34 more pages of records on October 26, 2009. *Id.*, Graham Decl. ¶ 41.

*A. Disclosure of a Compact Disc*

Among the records responsive to plaintiff's FOIA request to the BATFE was "a CD of photographs . . . referenced on the cover sheet related to request number 08-171 on December 13, 2007, but was inadvertently not released to [plaintiff]." Defs.' Mem. in Supp. of their Renewed Mot. for Summ. J. ("Defs.' Renewed Mot."), Ex. 2 ("Labrie Decl.") ¶ 4.[3] This "CD contained 8 photographs of two individuals, one of whom was female, and both of whom were not further identified." Defs.' Renewed Mot., Labrie Decl. ¶ 4. It was believed that the BATFE "intended to withhold the CD in full because [no one] could identify the individuals, but accidentally omitted it from the exemption portion of the cover sheet." *Id.*, Labrie Decl. ¶ 4. Staff discussed the CD with the assigned case agent, and it was determined "that one of these individuals is [plaintiff]." *Id.*, Labrie Decl. ¶ 4. Accordingly, the BATFE has released the photograph of plaintiff and the photographs of the female "with her facial features redacted under Exemption 7(C)." *Id.*, Labrie Decl. ¶ 4.

---

[3] Because defendants' prior motion for summary judgment and supporting declaration did not indicate whether the CD had been released, the Court deferred consideration of plaintiff's "Motion for Production of ATF CD Containing Photographs and All Other Photograph's [sic] with Respect to Plaintif[f]'s Instant Civil Action in Possession of the ATF" [Dkt. #22]. *Skinner v. U.S. Dep't of Justice*, 744 F. Supp. 2d at 190 n.4. The agency since has released the CD. Defs.' Renewed Mot., Labrie Decl. ¶ 3. In addition, in response to plaintiff's request "during this litigation . . . [for] color copies of 15 photographs of laboratory exhibits consisting of 9 printed pages . . . which were . . . delineated in [BATFE's] previously filed Vaughn Index," the BATFE released redacted copies of these photographs on November 8, 2010. *Id.*, Labrie Decl. ¶ 5. As is discussed below, the BATFE properly has redacted images of the third parties, and plaintiff's motion will be denied as moot.

3

### B. Referral to the Department of the Army

On November 21, 2007, the BATFE referred 12 pages of records to the Department of the Army. Defs.' First Mem., Graham Decl. ¶ 26. Relevant to this discussion are the documents described as "[a] copy of a Certificate of Release or Discharge from Active Duty" and two memoranda, one "from the Commander, 86th Ordnance Battalion to the Commander, US Army Armor Center and Fort Knox, dated March 8, 1991," and one "from the Commander, Company B, to the Commander, 86th Ordnance Battalion, dated March 6, 1991," both referencing plaintiff's discharge from the Army. Defs.' Renewed Mot., Decl. of Thom M. Jones ("Jones Decl.") ¶ 3.[4] The Army released these records to plaintiff in part after redacting the names of third parties under Exemption 6. *Id.*, Jones Decl. ¶ 4. Although plaintiff was advised of his right to appeal this determination to the Commander, U.S. Army Human Resources Command ("HRC"), *id.*, Jones Decl., Ex. (Letter to plaintiff from Kelly R. Fraser, Colonel, U.S. Army, Chief of Staff, U.S. Army Human Resources Command, dated March 13, 2008), "HRC records do not indicate that [plaintiff] appealed the partial denial" of his FOIA request. *Id.*, Jones Decl. ¶ 7.

### C. Referral to the U.S. Citizenship and Immigration Services

On December 13, 2007, the BATFE referred a one-page document to the U.S. Citizenship and Immigration Service ("USCIS"). Defs.' First Mem., Graham Decl. ¶ 29; *see id.*, Graham Decl., Ex. AA (Letter to B.J. Welsh, FOIA Officer, USCIS, from Suzanne Placanica,

---

[4] The remaining documents were routing and transmittal forms and copies of correspondence pertaining to the original FOIA request, the referral of documents from the BATFE to the Army, and the Army's release of records to plaintiff. *See* Defs.' Renewed Mot., Jones Decl. ¶ 4.

Disclosure Specialist, BATFE, dated December 13, 2007). The document was "a printout of information extracted from a Privacy Act system of records commonly referred to as [t]he Enforcement Communications System (formerly, Treasury Enforcement Communications System (TECS))." Defs.' Renewed Mot., Decl. of Jill E. Eggleston ("Eggleston Decl.") ¶ 5 (emphasis removed). From this document, the USCIS redacted "internal computer codes, an unpublicized investigation technique, and the names and employee identification numbers of federal law enforcement officers" under FOIA Exemptions 2, 7(C), and 7(E). *Id.*, Eggleston Decl. ¶ 7. The USCIS released this document to plaintiff on December 27, 2007. *Id.*, Eggleston Decl., Ex. C (Letter from T. Diane Cejka, Director, USCIS, dated December 27, 2007).

## II. DISCUSSION

### A. Summary Judgment in a FOIA Case

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). The Court grants summary judgment if the movant shows that there is no genuine dispute as to any material fact and is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). In a FOIA action to compel production of agency records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'" *Students Against Genocide v. Dep't of State*, 257 F. 3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978)). Summary judgment may be based solely on information provided in an agency's

5

supporting affidavits or declarations if they are relatively detailed and when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see Beltranena v. Clinton*, 770 F. Supp. 2d 175, 182 (D.D.C. 2011).

Plaintiff's opposition to defendants' renewed summary judgment motion is devoted entirely to his quest to obtain from the United States District Court for the Southern District of Mississippi exhibits from his criminal trial, defendants' alleged possession of these exhibits, and their alleged refusal to disclose them. According to plaintiff, his father "went to the Courthouse in South Mississippi and was allowed to examine the exhibits and allowed to take photographs" on two occasions in November 2010. Pl.'s Resp. in Opp'n of Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") ¶ 17; Pl.'s Aff. in Supp. of Pl.'s Resp. in Opp'n of Defs.' Mot. for Summ. J. ("Pl.'s Aff.") ¶¶ 8-9. Among these documents, plaintiff's father allegedly "discovered . . . incriminating evidence that further proves that the DOJ used false fraudulent evidence to convict plaintiff." Pl.'s Opp'n ¶ 17. Days later, a Drug Enforcement Administration ("DEA") agent allegedly "went to the District Courthouse in South Mississippi and took the trial exhibits." *Id.*; Pl.'s Aff. ¶ 12. Defendants, plaintiff claims, have "take[n] possession of the incriminating evidence to prevent [him] from further exposing them as liars," and depriving him of an opportunity to have a private investigator review these exhibits "to further [his] claims of wrongful acts on behalf of DOJ employees involved" in the criminal case. *Id.* ¶ 30. Thus, plaintiff asserts, "the evidence exhibits [are] in the possession of the . . . DEA and this Court has

the authority to enjoin the agency from withholding agency records and to order the production of any agency records properly withheld from complainant." Pl.'s Opp'n ¶ 22 (brackets and internal quotation marks omitted).

"A requester may challenge the government's showing by setting out specific facts showing a genuine issue for trial," *Brown v. U.S. Dep't of Justice*, 742 F. Supp. 2d 126, 129 (D.D.C. 2010) (citation and internal quotation marks and brackets omitted), but he "cannot rebut the good faith presumption" afforded to an agency's supporting declarations "through purely speculative claims about the existence and discoverability of other documents." *Id.* (citations omitted). Nor do plaintiff's speculative and conclusory assertions amount to "contradictory evidence in the record or by evidence of agency bad faith." *Halperin v. Cent. Intelligence Agency*, 629 F.2d 144, 148 (D.C. Cir. 1980); *see Judicial Watch, Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 773 F. Supp. 2d 57, 60 (D.D.C. 2011).

### B. Exemptions

#### 1. Exemption 2

Exemption 2 protects from disclosure material that is "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). From a one-page document described as a "Person/Subject Entry screen printout," the USCIS withholds "internal computer codes associated with a hyper-sensitive law enforcement database containing homeland security information, *i.e.*, TECS." Defs.' Renewed Mot., Eggleston Decl., Ex. D (Vaughn Index) at 1 (page number designated by the Court). "TECS is a comprehensive computerized law enforcement and communications information system . . . designed to identify individuals,

7

businesses, and vehicles suspected of or involved in violation of federal law." *Id.*, Eggleston Decl., Ex. D at 1. It also allows for "message transmittal between federal, state, and local law enforcement agencies," and "provides access to the FBI's National Crime Information Center (NCIC) and the National Law Enforcement Telecommunications Systems (NLETS)." *Id.*, Eggleston Decl., Ex. D at 1. "[S]trict access controls, passwords and background checks on individuals accessing the data" are among the measures taken to ensure that TECS data is being handled properly. *Id.*, Eggleston Decl., Ex. D at 1-2.

The USCIS withholds as "high 2" exempt information these internal computer codes, explaining that they "not only permit access to the system, but are tied to the means to identify, monitor, track, audit and, when necessary, pursue, apprehend and prosecute unauthorized uses and users." Defs.' Renewed Mot., Eggleston Decl., Ex. D at 2. Its declarant explains that "[p]ublic dissemination of these access codes would permit unauthorized users to avoid recognition, instant detection and apprehension, while simultaneously giving them near-unfettered access to one of the nation's most critical electronic law enforcement infrastructures and the ability to irreparably corrupt the integrity of data contained therein." *Id.*, Eggleston Decl., Ex. D at 2.

The difference between "High 2" and "Low 2" exempt information, long recognized by the D.C. Circuit, is no longer an accepted distinction. *See Milner v. Dep't of the Navy,* 131 S.Ct. 1259, 1265 (2011) ("Our construction of the statutory language simply makes clear that Low 2 is all of 2 (and that High 2 is not 2 at all . . . .")). The Supreme Court recently has held, "consistent with the plain meaning of the term 'personnel rules and practices,'" that Exemption 2 "encompasses only records relating to issues of employee relations and human

8

resources." *Id.* at 1271. Under *Milner*, then, "Exemption 2 may no longer be used to justify withholding records on the grounds that disclosure would risk circumvention of the law or federal agency functions." *Raher v. Fed. Bureau of Prisons*, No. CV-09-526, 2011 WL 2014875, at *2 (D. Or. May 24, 2011). On this record, the Court cannot grant summary judgment in defendants' favor with respect to any information withheld under Exemption 2.

2. Exemption 6

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The term "similar files" is construed broadly and is "intended to cover detailed Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982) (citation omitted). "The information in the file 'need not be intimate' for the file to satisfy the standard, and the threshold for determining whether information applies to a particular individual is minimal." *Milton v. U.S. Dep't of Justice*, __ F. Supp. 2d __, __, 2011 WL 1743234, at *2 (D.D.C. May 6, 2011) (quoting *New York Times Co. v. Nat'l Aeronautics and Space Admin.*, 920 F.2d 1002, 1006 (D.C. Cir. 1990)). Information protected under Exemption 6 includes such items as a person's name, address, place of birth, employment history, and telephone number. *See Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989); *see also Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 106 (D.D.C. 2010) (personal email addresses); *Schmidt v. Shah*, No. 08-2185, 2010 WL 1137501, at *9 (D.D.C. Mar. 18, 2010) (employees' home telephone numbers); *Schwaner v. Dep't of the Army* 696 F. Supp. 2d 77, 82 (D.D.C. 2010)

(names, ranks, companies and addresses of Army personnel); *United Am. Fin., Inc. v. Potter*, 667 F. Supp. 2d 49, 65-66 (D.D.C. 2009) (name and cell phone number of an "unknown individual"). Once this threshold inquiry is met, the Court employs a balancing test to determine whether release of such information constitutes a clearly unwarranted invasion of personal privacy. *Washington Post Co. v. U.S. Dep't of Health and Human Servs.*, 690 F.2d 252, 260 (D.C. Cir. 1982). It is the requester's obligation to demonstrate the existence of a significant public interest in disclosure. *See Coleman v. Lappin*, 680 F. Supp. 2d 192, 196 (D.D.C. 2010).

The Army denied plaintiff's FOIA request in part "in accordance with Title 5, United States Code, Section 552(b)(6), and paragraph 3-200, Exemption 6, Army Regulation 25-55, the Department of the Army Freedom of Information Act Program." Defs.' Renewed Mot., Jones Decl. ¶ 5. Redacted were the names of third parties appearing in the three documents referred by the BATFE to the Army, *see id.*, Jones Decl., Attach., in order "to protect [their] personal privacy," *id.*, Jones Decl. ¶ 4. Only the names were redacted; the remainder of the documents was released. *Id.*, Jones Decl. ¶ 6. Wholly absent from plaintiff's opposition is an assertion of any public interest which outweighs the personal privacy interests of these third parties. *See generally* Pl.'s Opp'n.

The Court concludes that the Army has complied fully with its obligations under the FOIA. Its decision to redact the names of third parties was appropriate, and all segregable information has been released to plaintiff.

3. Exemption 7(C)

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C).[5] In determining whether this exemption applies to particular material, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure. *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007); *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993); *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992) . The privacy interest at stake belongs to the individual, not the government agency, *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 763-65 (1989); *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) (noting individual's significant privacy interest "in avoiding the unlimited disclosure of his or her name and address"), and individuals have a "strong interest in not being associated unwarrantedly with alleged criminal activity. *Stern v. Fed. Bureau of Investigation,* 737 F.2d 84, 91-92 (D.C. Cir.1984). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d at 1282 (quoting *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773). It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant. *See Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

---

[5] The Court already has determined that the records responsive to plaintiff's FOIA request were compiled for law enforcement purposes. *See Skinner v. U.S. Dep't of Justice*, 744 F. Supp. 2d at 206.

Under Exemption 7(C), the USCIS withholds "the names and identification numbers of law enforcement personnel found in TECS records compiled for law enforcement purposes." Def.'s Mem., Eggleston Decl., Ex. D at 2. Its declarant asserts that "[p]ublic identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties, as well as in their private lives." *Id.*, Eggleston Decl, Ex. D at 2. Further, the declarant asserts that individuals "who serve as career public servants are not thereby stripped of all vestiges of personal privacy, even with respect to the discharge of their official public duties," such that the "interest in protecting the privacy of . . . law enforcement officers and employees" prevails "[i]n the absence of a demonstration of significant misconduct." *Id.*, Eggleston Decl, Ex. D at 2. Accordingly, the USCIS redacts the names of and identifying information about law enforcement personnel mentioned in the relevant records in order to prevent the "risk [of] impairing their effectiveness by subjecting them to potential harassment, stigmatization, overwhelming media scrutiny or, worse, physical harm." *Id.*, Eggleston Decl, Ex. D at 2.

Applying a similar rationale, the BATFE withholds under Exemption 7(C) the name of a federal law enforcement agent and "the face of a third party individual referenced in connection with the investigation" of plaintiff's activities. Defs.' Renewed Mot., Labrie Decl. ¶ 9. Absent plaintiff's submission of "waivers that would permit release of any third party individual's information," the BATFE's declarant explains that the agency "balance[d] the interests at stake" and "determined that . . . disclosure of the information could reasonably be expected to cause the third parties . . . embarrassment, harassment, and harm, and would do little,

12

if anything at all, to aid the public's understanding of the BATFE." *Id.*, Defs.' Renewed Mot., Labrie Decl. ¶ 11.

"The D.C. Circuit has consistently held that [E]xemption 7(C) protects the privacy interests of all persons mentioned in law enforcement records, including investigators, suspects, witnesses and informants, and has determined that such third-party information is categorically exempt from disclosure under [E]xemption 7(C), in the absence of an overriding public interest in its disclosure." *Lewis v. U.S. Dep't of Justice*, 609 F. Supp. 2d 80, 84 (D.D.C. 2009) (internal quotation marks and citations omitted); *see Sussman v. U.S. Marshals Serv.*, 494 F.3d at 1116 (names, addresses, telephone numbers, social security numbers and other private information about law enforcement officers, other government employees, and third parties other than a third party who had authorized the release of records about himself to the requester); *Richardson v. U.S. Dep't of Justice*, No. 09-1916, 2010 WL 3191796, at *7-8 (D.D.C. Aug. 13, 2010) (identities of and personal information about FBI Special Agents, Metropolitan Police Department officers, law enforcement technicians, an Assistant United States Attorney, and eyewitnesses to an attempted murder); *Lasko v. U.S. Dep't of Justice*, 684 F. Supp. 2d 120, 132 (D.D.C. 2010) (identities of DEA Special Agents and laboratory personnel, and state and local law enforcement officers); *Willis v. U.S. Dep't of Justice*, 581 F. Supp. 2d 57, 76 (D.D.C. 2008) (identities of federal and local law enforcement personnel). Absent a showing by plaintiff that "the public interest sought to be advanced is a significant one. . . and . . . [that] the information is likely to advance that interest," *Sussman v. U.S. Marshals Serv.*, 494 F.3d at 1115 (internal quotation marks and citations omitted), the Court concludes that the agency properly withheld this third party information under Exemption 7(C).

4. Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Courts have held that information pertaining to law enforcement techniques and procedures properly is withheld under Exemption 7(E) where disclosure reasonably could lead to circumvention of laws or regulations. *See, e.g., Morley v. Cent. Intelligence Agency*, 453 F. Supp. 2d 137, 157 (D.D.C. 2006) (approving the withholding of information pertaining to security clearances and background investigations on the ground that "disclosure of CIA security clearance and investigatory processes would risk circumvention of those processes in the future"), *rev'd on other grounds*, 508 F.3d 1108 (D.C. Cir. 2007); *Fisher v. U.S. Dep't of Justice*, 772 F. Supp. 7, 12 (D.D.C. 1991) (upholding FBI's decision to withhold information about law enforcement techniques where disclosure would impair its future effectiveness and, "within the context of the documents at issue could alert subjects in drug investigations about techniques used to aid the FBI"), *aff'd*, 968 F.2d 92 (D.C. Cir. 1992).

"The TECS screen printout at issue here, among other things, contains a 'all-points bulletin' regarding an ongoing criminal law enforcement operation; a brief profile of the subject of this communication, including his involvement, habits and level of threat; subject tracking; and actions to be taken by law enforcement agents stationed at check points if subjects are encountered." Defs.' Renewed Mot., Eggleston Decl., Ex. D at 3. Release of this

14

information to plaintiff, the declarant states, "will have the unintended and undesirable result of placing the same information at the disposal of other subjects of investigation(s), assisting them to evade detection and apprehension by alerting them to the investigation techniques used to aid the underlying law enforcement operation and, thereby, impair the effectiveness of those law enforcement techniques." *Id.*, Eggleston Decl., Ex. D at 3.

D.C. Circuit precedent "sets a relatively low bar for the agency to justify withholding" information under Exemption 7(E). *Blackwell v. Fed. Bureau of Investigation*, __ F.3d __, __, 2011 WL 2600831, at *3 (D.C. Cir. July 1, 2011). The exemption allows for withholding information in the face of "not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Id.* (quoting *Mayer Brown LLP v. Internal Revenue Serv.,* 562 F.3d 1190, 1193 (D.C. Cir. 2009)). Law enforcement procedures and techniques are afforded categorical protection under Exemption 7(E), *see Fisher v. U.S. Dep't of Justice*, 772 F. Supp. at 12 n.9, and plaintiff presents no argument to rebut the USCIS' showing that the information withheld falls within the scope of such protection.

The Court concludes that the USCIS properly has redacted from the TECS screen printout information pertaining to the techniques, procedures and guidelines for action in an ongoing criminal law enforcement operation.

III.  CONCLUSION

The Court concludes that the BATFE has demonstrated its full compliance with the FOIA by releasing copies of photographs after having redacted only the name of a federal law enforcement agent and the face of a third party, as has the Army by redacting only the names of third parties.  Further, the Court concludes that the USCIS properly withheld the names and employee identification numbers of federal law enforcement officers under Exemption 7(C) and investigation techniques under Exemption 7(E).  In these respects, defendants' renewed motion for summary judgment will be granted.  Because the USCIS relies on an impermissible basis for withholding computer access codes under Exemption 2, the motion will be denied in part without prejudice.  An appropriate Order accompanies this Opinion.

/s/
PAUL L. FRIEDMAN
DATE: August 24, 2011                               United States District Judge